UNITED STATES of America,
Plaintiff,

v.

Wilbert Charles SCHULTZ, Jr.,
Defendant.

Crim. No. 31667.

United States District Court
N. D. New York.

Aug. 17, 1956.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., Richard E. Bolton, Asst. U.S. Atty., Troy, N. Y., of counsel, for the United States.

Hayden C. Covington, Brooklyn, N. Y., for defendant.

BRENNAN, Chief Judge.

The existence of procedural due process in the action of the draft board in classifying the registrant defendant is the disputed point involved in this trial.

Wilbert Charles Schultz, Jr., was brought to trial before the Court on an indictment which charges a violation of the Universal Military Training and Service Act of 1948, as amended, in that he failed and refused to report for civilian work at Marcy State Hospital at

Marcy, N. Y. on June 3, 1954—all in violation of Title 50 U.S.C.A.Appendix, § 462.

The draft board file of this defendant was received in evidence and it was stipulated that the defendant did not report for civilian work as ordered by the local draft board and referred to in the indictment. The above constituted the Government's case and reference will be made to the pertinent parts of the record which are involved in the matter of the determination of the defendant's guilt.

The defendant, who was born Dec. 3, 1932, registered with Local Board No. 71 at Belmont, N. Y. sometime prior to Feb. 4, 1952. On that day, he filed his questionnaire furnished by the Board in which he asserted a conscientious objection to war and expressed the opinion that he should be classified IV–D which is a classification reserved for ministers of religion or divinity students. On March 15 he was classified I–A. The prescribed notice of such classification was mailed to him and on the same date Form 150, which is a special form for conscientious objectors, was mailed to the defendant who thereafter returned same to the local board. On Feb. 29, 1952, defendant's claim of conscientious objection was recognized by the board and he was classified I–O which in effect exempted him from military service but under certain circumstances would require the performance of civilian work contributing to the maintenance of the national health, safety, or interest. CFR 1622.14, 1660.-20.

The defendant appealed from such classification and on July 31, 1952 was classified I–O by the Appeal Board and notice of such classification was properly given to the defendant. After a physical examination, he was found to be acceptable for the service indicated in his classification.

About Nov. 24, 1952, defendant wrote the local board requesting that they "consider my appeal of classification" claiming that he was entitled to the IV–D classification rather than that of I–O. In the same letter, he stated that the board should consider his appeal because he did not have a personal appearance before the board. On Nov. 25 the board, through its clerk, advised the defendant by letter that since the classification of I–O was made by the Appeal Board, there was no further appeal provided. The clerk also advised that the defendant had the right to appear before the board at any time and an appointment for Dec. 5 was suggested.

Forms were sent to defendant on which he was requested to designate work which he would perform in lieu of induction. On Dec. 3, 1952, the defendant called at the office of the board and advised that he would not do any type of work authorized under the regulations. His letter of Dec. 1 indicated the same attitude.

On Dec. 5, 1952, he appeared before the board who made no change in his classification. Then followed a series of communications which may be summarized by stating that the defendant refused both orally and in writing to designate or perform any service or work as contemplated under the regulations. On July 24, 1953, the defendant was requested to appear before the board to discuss the matter of his employment under the I–O classification. He failed to appear. He thereafter failed to report for civilian work at Marcy State Hospital, Marcy, N. Y., on June 3, 1954 as ordered by the board.

The defendant does not actually controvert the facts appearing in the file. He was the sole witness in his own behalf. His testimony, insofar as it is pertinent, related only to the meeting of Dec. 5, 1952. It is evident that the defendant's claim that he should receive the classification of IV–D—that of a minister—was the subject of discussion. The defendant testifies that the chairman stated in effect that the Appeal Board having acted, the local board could not disturb that classification. He further testifies that his qualifications as a minister were discussed as was his ministerial training or education. He testifies that the Chairman stated in effect that he would not

be qualified as a minister because he had not graduated from a theological seminary. On cross-examination, he testified that he pointed out to the board the contents of his file relating to his religious education and exercises and secular work as the basis of his claim.

The clerk of the board was called by the Government in rebuttal who testified at the time of the defendant's appearance on Dec. 5, 1952 the regulations as to ministerial classification were read to him by the board and he was told he did not qualify for a IV–D classification.

With commendable frankness, the counsel for the defendant has withdrawn two of the contentions made at the time of the trial and expressed in a motion for a judgment of acquittal at the close of all of the evidence. There remain only two contentions advanced by the defendant which require consideration. (1) Defendant contends that he was denied procedural due process in that at his personal appearance on Dec. 5, 1952 and on May 3, 1954 when additional information was considered by the board, the board was under the erroneous impression that the action of the appeal board in classifying the defendant on July 1, 1952 as I–O prevented further or other classification and that the board proceeded on the erroneous assumption that a certificate of graduation from a theological seminary was a requirement before the minister classification of IV–D could be made. (2) That the defendant was denied procedural due process on May 3, 1954 when the local board, after considering defendant's status on its own motion, failed to notify the defendant of its action in not reopening the subject of defendant's classification under the provisions of Sec. 1625.4 CFR.

The issues here are therefore rather narrow. There is no claim that the action of the board was arbitrary in that it is not supported in the record on a basis in fact. In substance, there is no dispute as to the guilt of this defendant if he was accorded procedural due process by the board in the course of the performance of its functions.

Like the term "due process" itself, procedural due process is not capable of an all-inclusive definition. In considering same, the fact that the function of the board is administrative must be borne in mind. The process of classification is in no respect a criminal proceeding although absolute fairness is required since the result may become as here the basis of a criminal action. Procedural defects, not resulting in prejudice or unfairness to a registrant are not of such consequence as to void the order of the board. It would seem to follow then that the denial of a right, the foreclosing of the opportunity to the defendant to assert his claims before a designated authority or the existence of prejudice or unfairness are the marks which indicate the lack of procedural due process. Eagles v. U. S. ex. rel Samuels, 329 U.S. 304, at page 314, 67 S.Ct. 313, 91 L.Ed. 308; United States v. Manns, 7 Cir., 232 F.2d 709; Uffelman v. U. S., 9 Cir., 230 F.2d 297; Rowton v. U. S., 6 Cir., 229 F.2d 421. This principle is recognized in this circuit. United States v. Fry, 203 F.2d 638.

The defendant's contention that the failure of the board to notify the defendant of the action taken on May 3, 1954 was prejudicial may be quickly disposed of. It is plain that the board recognized the provision of Sec. 1625.1 CFR that no classification of a registrant is permanent. It is further evident that the board recognized its obligation under subdivision (c) of the above regulation to keep informed as to the status of this registered defendant. In carrying out its duty, it sought to bring its information as to the status of this defendant up to date by the inquiry addressed to him under date of April 14, 1954. The defendant answered the inquiry and on May 3, 1954 such additional information was reviewed by the board. It was determined that such information was not sufficient to warrant the reopening of the question of the defendant's classification. I find no requirement under the circumstances that the defendant be notified of the action

of the board. The May 3, 1954 action of the board was not taken under the provisions of Sec. 1625.4 or 1625.12 but rather it was an effort by the board "to keep currently informed concerning the status of classified registrants." 1625.1 (c). This contention, made by the defendant, is rejected.

■ The contention of the defendant that the board proceeded upon an erroneous theory or understanding on the occasion of defendant's appearance before the board on Dec. 5, 1952 and in its later action of May 3, 1954 creates more difficulty. The statements and attitude of the board at the meeting of Dec. 5, 1952 must be considered in the light of the factual situation existing at that time.

This defendant had been classified, had appealed from such classification, and had been advised that such appeal resulted in a conscientious objector's classification. He had made no request for a personal appearance before the board. He had been examined as to his physical fitness and found acceptable. Not having indicated within the required ten-day period that he had found employment and not having submitted three types of civilian work which he was qualified to perform in lieu of induction as provided in Sec. 1660.20 CFR, the board received on Nov. 24, 1952 the defendant's letter, the burden of which was that the board consider an appeal from the classification made by the appeal board. The board in substance replied advising the defendant that no further appeal was provided and an appointment was made for Dec. 5 for the defendant to make a personal appearance before the board. Prior to the time set for the personal appearance, the defendant had been ordered to report to the employment office at Wellsville, N. Y. to consider the type of civilian work that he would be willing to perform. Prior also to the date of the personal appearance, the defendant had indicated both orally and in writing that he would neither name, accept nor perform any civilian work procured under the provisions of the Selective Service Act. No new facts had been submitted by the defendant which would call for a reconsideration of his status with the board. The defendant's theory that the board, through the statement of its chairman, proceeded upon the erroneous theory that no further or different classification could be made by the board in view of the decision of the appeal board is hardly consistent with the circumstances and the evidence. From plaintiff's own testimony, it appears that after the statement made by the chairman, the board did in fact discuss the matter of defendant's classification. The defendant did urge before the board that a IV–D classification was justified in view of the contents of his file. In the discussion, the defendant himself stated " * * * they said because I had no theological training, I was not qualified to this and they didn't consider, consider me as a minister—recognize me as one. * * * " Plaintiff's own evidence is therefore far from convincing that the board assumed that they had no authority to change his classification. As the board plainly pointed out, it was not the lack of authority but the lack of evidence that was the basis of the board's failure to make any change in the classification. Certainly the board is presumed to have knowledge of its powers and the evidence, directed to show a misapprehension thereof, to my mind is lacking in probative force.

■ There remains for consideration the contention that the Board adopted an erroneous standard in the consideration of defendant's status as a minister at the hearing of Dec. 5, 1952. The defendant's argument is to the effect that at said hearing, the defendant was advised that not having graduated from a theological seminary, he would not be qualified for the IV–D classification as a minister. If this was the attitude and understanding of the board, there is no question but they were in error, 50 U.S.C.Appendix 466(g) (1, 2, 3). Again the evidence of what transpired at the hearing must be considered in the light of the existing facts.

The IV–D classification includes not only ministers but students preparing for the ministry. In the defendant's questionnaire, asserting that he was both a minister and a student preparing for the ministry, he requested such a classification. Submitted with the form for conscientious objectors was the statement of this defendant who asserts that he is entitled to a IV–D classification and points out that " * * * I am an *enrolled member* in the Theotratic Ministry School, which is conducted by the Wellsville Company of Jehovah's Witnesses. This school provides the necessary training for one to become a duly ordained minister. It is my desire to complete this course while at the same time I am striving to reach the Pioneer Quota of Hours (100 hours per Month) of preaching This Gospel of the Kingdom. * * * "Then after six months of such continuous service and meeting the quota of 100 hours each month or 600 hours for the six months period then I will be eligible to attend the Watchtower Bible School at South Lansing, N. Y."

Defendant's statement was corroborated by the written statement of a "company servant" to the effect that the defendant had been enrolled in the Theotratic Ministry School. " * * * this is school work that provides one the necessary preparation to become a 'duly ordained minister' ". Finally the defendant concludes his affidavit of Feb. 23, 1952 with the statement "Being enrolled as a student under the direction of the Watchtower Bible & Tract Society and pursuing a full-time course of instruction, and regularly engaging in the preaching work carried out by said Society, as a regular minister of religion, I believe you will place me in my proper classification of IV–D". It is noted that in the same affidavit the defendant from his quotation of only a part of the regulation seems to rely alternatively upon his status as a minister or a student.

In addition the board had information as to the hours and nature of the defendant's secular employment. With that background, it is easy to understand how the question of the defendant's graduation from a theological seminary arose at the hearing of Dec. 5, 1952.

Although defendant asserts in his direct examination that he was advised by the chairman that he was not entitled to a minister's rating, unless he was a graduate of a theological seminary, his own testimony on examination by the court indicates that such was the witness' conclusion rather than the direct assertion of the chairman. His testimony was as follows. "They said because I had no theological training I was not qualified to this and they didn't consider it, consider me as a minister—recognize me as one". In addition to this testimony, the circumstances all indicate that the board was in fact probing the education of the defendant to ascertain whether or not he came within the provisions of the act which would warrant his IV–D classification either as a minister or as a student preparing for the ministry.

A reading of the whole record and a consideration of all of the circumstances lead to the conclusion that the board did not act upon the assumption that a graduation certificate was the sole standard on which a IV–D classification as a minister could be based. To conclude otherwise would make the board's inquiry as to defendant's secular work as testified to by the clerk without either meaning or purpose.

While the members of the board are not lawyers or judges, it cannot be assumed that they failed to read or were incapable of understanding the definitions of a regular minister of religion or duly ordained minister of religion as defined in the statute. In addition, it appears affirmatively that the board was acquainted with the regulation providing for the classification of IV–D. Again the evidence of the defendant on this subject is found unconvincing and the proof insufficient to establish that the board acted in error to the prejudice of this defendant.

It may be added that the examination of the file in this case shows a prolonged

and consistent effort on the part of the board to afford this defendant the full measure of his rights. The file shows equally a consistent attitude upon the part of the defendant to refuse the procedures afforded by the board and to reject any and all attempts made by the board to avoid the charge of violation of law.

Having found that the defendant was afforded due process by the board at all times, the necessity of discussing principles of law, briefed by both parties, which might be applicable under a contrary finding is eliminated.

The defendant is found guilty as alleged in the indictment. Judgment will follow accordingly, and it is

So ordered.