Wesley Lawrence **UFFELMAN,**
Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 14780.

United States Court of Appeals
Ninth Circuit.

Jan. 27, 1956.

3. Rule 52(a), Fed.Rules Civ.Proc. 28 U.S.C.A.

**298**

J. B. Tietz, Los Angeles, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before MATHEWS, HEALY and LEMMON, Circuit Judges.

LEMMON, Circuit Judge.

 Recognition of the privilege of conscientious objection to military service is a statutory grace, not a Constitutional right. While it is true that, implementing this grace, certain procedural safeguards have been established by statute and administrative rule, these safeguards cannot be parlayed into rigid Constitutional guarantees of a "trial" before a draft board.

In United States v. Macintosh, 1931, 283 U.S. 605, 623, 51 S.Ct. 570, 575, 75 L.Ed. 1302, the purely statutory character of this grace was spelled out by the Supreme Court in unequivocal words:

> "The conscientious objector is relieved from the obligation to bear arms in obedience to no constitutional provision, express or implied; but because, and only because, it has accorded with the policy of Congress thus to relieve him."

When, as here, a draft registrant chooses to be indicted rather than inducted, he can clamor for only limited "rights".

1. *Statement of Facts*

Since the appellant's legal contentions are related with especial closeness to his

particular situation in the *instant case*, a somewhat detailed summary of the facts will be helpful.

The appellant registered with the Selective Service on September 18, 1948. He filed an eight-page Classification Questionnaire on May 2, 1949, containing, *inter alia*, the following statements:

He was born on February 11, 1930. His "occupation" was that of dairy and beef farmer. (At the time of his trial he testified that he was a hod carrier.) He stated that "I am a student preparing for the ministry under the direction of Jehovah's Witness's (sic) in a theological or divinity school". He did not claim at that time that he was either a regular or an ordained minister. He did not state what classification he should be given, at the place where such answer was invited, but he did state that he was studying "to better learn and qualify for ministry". He was single and was working forty hours a week as a farmer.

He further stated that "I am attending the Kingdom Hall of Jehovah's Witness's (sic) located at 2964- 24 street Sacramento, California." He asserted that he was a conscientious objector, and was sent the four-page Special Form for Conscientious Objectors on June 27, 1949, which he completed and returned on July 1, 1949.

On August 16, 1950, the appellant was placed into Class IV–E, at that time the classification for the "complete" conscientious objector registrant. That classification entailed no burden or obligation that would take the appellant from his "then part-time ministry", hence he did not appeal.

On November 14, 1951, the appellant was reclassified into I–A by the Local Board. On December 11, 1951, he appeared before the Local Board and, in a statement dated December 10, 1951, claimed, *admittedly for the first time*, that he should have the IV–D minister's classification because he had become a "pioneer", or "full-time", minister. The Local Board kept him in Class I–A, and on December 20, 1951, he took an appeal.

His complete file was forwarded to the appeal board on January 8, 1952.

The appellant's case was referred to the Department of Justice for inquiry and hearing with respect to the character and good faith of his conscientious objections, pursuant to Sec. 6(j) of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 456(j). A hearing was held on April 8, 1952.

On July 8, 1952, T. Oscar Smith, Special Assistant to the Attorney General, recommended that the appellant's claim of conscientious objection be sustained. The Appeal Board classified the appellant in Class I–O, on July 18, 1952. At that time, the designation for a complete conscientious objector classification had been changed from IV–E to I–O.

He appealed his classification of I–O to the Presidential Appeal Board on March 17, 1953, but was put back into Class I–A by that body, on June 3, 1953.

On June 25, 1953, the appellant was ordered to report for induction, and on July 8, 1953, he refused to submit thereto.

On July 29, 1953, he was indicted, and October 23, 1953, he was acquitted of violating the Universal Military Training and Service Act.

On November 13, 1953, the appellant was reclassified in I–O. On November 19, 1953, he asked for a personal appearance before the Local Board, and he was granted such an interview on December 8, 1953. He submitted various letters and other material to support his position that he was a minister of religion. Included in that material were letters from Homer L. Hendrickson, presiding minister of the South Unit of the Sacramento Jehovah's Witnesses; Alex Uffelman, assistant presiding minister; Paul R. Halbert, Bible study servant; and Albert O. Brese. The first-named three persons signed jointly. Brese stated that the appellant was connected with "the Bible and ministerial work of Jehovah's Witnesses".

At the trial, the appellant testified that he brought Hendrickson and Brese with

him to the Local Board on the occasion of his personal interview; that he asked the Board whether he might "invite them in and give testimony"; and that "they weren't allowed to come in".

The Local Board continued the appellant in Class I–O on December 10, 1953, and on January 7, 1954, the appellant was likewise classified as I–O by the Appeal Board. At that time and at the time of the trial, the appellant's position in his church was that of "advertising servant", his duty being to "take care of the magazines".

On March 9, 1954, the appellant had another personal appearance before the Local Board, at which time he stated that his work was that of a hod carrier. On April 16, 1954, the Local Board ordered the appellant to report on April 27, 1954, for institutional work at the Los Angeles County Department of Charities. It was stipulated at the trial that, although ordered to report, the appellant did not do so.

On January 19, 1955, the appellant was indicted for failure to comply with the order of his Local Board. Trial by jury was waived.

At the trial, Mrs. Lillian Z. Searle, clerk of Local Board No. 23 who was called as a witness by the appellant, was asked whether any advisers were appointed by the Board during her tenure, which commenced about January, 1952.

"Well, the Board members always act as advisors. The coordinator acts as an advisor. And there is an appeal agent that acts as an advisor, * * *."

In answer to a question by the Court, Mrs. Searle stated that no "specific person otherwise" had been appointed "Advisor to Registrants".

On cross-examination, Mrs. Searle testified that the names, addresses, and telephone numbers of the Board members and of the appeal agent were placed on top of her desk; that the appellant had "never been refused any personal appearance"; that she knew of no case in which, having been "retained in a classification by a personal appearance", he had not taken an appeal; and that he had submitted material for inclusion in his file on "many occasion"; and that no one had ever refused him the opportunity to submit such material.

Colonel George R. Ferrill, described in the record as "an official of the California Selective Service System", when called as a witness for the appellant, testified on cross-examination that in California a Government appeal agent must be an attorney. His testimony on the subject of "Advisors to Registrants" was substantially the same as that of Mrs. Searle.

The appellant testified that during his classification period he had consulted from time to time with Hagen (sic) C. Covington, of New York, counsel for Jehovah's Witnesses, described in the appellee's brief as "probably the outstanding authority on Selective Service today". The appellant consulted with Mr. Covington on "that last classification" which he received—presumably the one under which he refused to be inducted and was convicted instead. *Hayden* C. Covington is named as counsel in eight of the cases cited in the present opinion. We have no doubt that he is the attorney referred to by the appellant.

The District Court adjudged the appellant guilty, and sentenced him to imprisonment for one year and one day. From that judgment, the present appeal has been taken.

2. *The Questions Presented*

1. Is the failure to post the names and addresses of "Advisers[1] to Registrants" a denial of due process?

2. Is a registrant deprived of due process when, although there has been one "inquiry and hearing" by the Department of Justice, there has not been a second such "inquiry and hearing" in the case of the same registrant, who was acquitted in the first case, and who, in

1. The spelling "adviser" is preferred by Webster's New International Dictionary, Second Edition (1955).

the second processing, is classified as a conscientious objector?

3. Was the Local Board's refusal to hear two witnesses offered by the appellant a denial of due process?

3. *The Lack of a Formally Designated "Adviser to Registrants" Did Not Amount to a Denial of Procedural Due Process*

Section 1604.41 of Title 32 of the Code of Federal Regulations, compiled as of December 31, 1951, and effective as to facts arising on or after January 1, 1952, reads as follows:

"Advisors to registrants shall be appointed by the Director of Selective Service upon recommendation of the State Director of Selective Service to advise and assist registrants in the preparation of questionnaires and other selective service forms and to advise registrants on other matters relating to their liabilities under the selective service law. Every person so appointed should be at least 30 years of age. The names and addresses of advisors to registrants within the local board area shall be conspicuously posted in the local board office."

In the Revision of Title 32 covering regulations published on or before December 31, *1954*, "effective as to facts arising on and after January 1, 1955," and therefore not applicable here, the mandatory word "shall" in the first line has been changed to the permissive "may". This recent amendment to the Code of Federal Regulations does not seem to have been noticed by counsel, since Executive Order No. 10594, U.S. Code Congressional and Administrative News 1955, p. 1055, incorporating a similar amendment, and cited by the appellant, changed Sec. 1604.41, according to counsel, on January 31, 1955, or thirty days *after* the effective date of the 1954 revision referred to above.

As we have seen, both Mrs. Searle and Colonel Ferrill agreed that no "Advisor to Registrants" had been appointed under the present Act. They also agreed, however, that members of the Board, the clerk of the Board, the coordinator, and the appeal agent act as advisers. Furthermore, the evidence shows that the appellant was constantly advised by Mr. Covington, one of the nation's leading authorities on the Selective Service law.

The appellant relies heavily upon our opinion in Chernekoff v. United States, 9 Cir., 1955, 219 F.2d 721, 722, 724, in which we expressed "serious doubt" as to the "validity" of the "practice" of local boards in Los Angeles County, California, in failing to post the names of advisers, and stated that such failure "presents another problem of due process". But the passing reference in the Chernekoff case does not control here. There no showing was made that the registrant had available the battery of "advisers" that were ready to assist the appellant in the instant case. Counsel in the instant case agreed that the "label" given to such advisers is not important, so long as the registrant is assured of ready and sound advice. The record here establishes beyond cavil that the appellant was so assured.

In Eagles v. United States ex rel. Samuels, 1946, 329 U.S. 304, 312, 67 S.Ct. 313, 318, 91 L.Ed. 308, a Selective Service case, the Court said:

"If it cannot be said that there were procedural irregularities of such a nature or magnitude as to render the hearing unfair, (Case cited), or that there was no evidence to support the order, (Case cited), the inquiry is at an end."

■ This Court, in another Selective Service case, adhered to the principle "that procedural irregularities or omissions which do not result in prejudice to the registrant are to be disregarded." Knox v. United States, 9 Cir., 1952, 200 F.2d 398, 401.[2]

---

**2.** See also Martin v. United States, 4 Cir., 1951, 190 F.2d 775, certiorari denied, 1951, 342 U.S. 872, 72 S.Ct. 115, 96 L. Ed. 656; United States v. De Lime III,

3 Cir., 1955, 223 F.2d 96, 101; United States ex rel. McCarthy v. Cook, 3 Cir., 1955, 225 F.2d 71, 73.

.

Since no prejudice is shown to have resulted from the Local Board's failure to have the Director of Selective Service to appoint "advisers to registrants" and its consequent failure to post the names of such advisers in its office, we hold that there is no merit to this first "question" presented by the appellant.

4. *The Appellant Was Not Deprived of Due Process by Not Being Given A Second Department of Justice Hearing.*

As we have seen, the appellant's case was referred to the Department of Justice for inquiry and hearing during the course of the proceedings in his first case, which resulted in his acquittal. The appellant concedes, as indeed he must, that "The file shows that in the eight months between his reclassification by the local board and his reclassification by the appeal board, the FBI investigated his current status, a Hearing Officer of the Department of Justice *interviewed him at length* and the Attorney General made a recommendation, based on the foregoing, to the appeal board". (Emphasis supplied.) The Attorney General's recommendation was that the appellant's claim of conscientious objection should be sustained, and, as already noted, the Appeal Board followed the recommendation and classified the appellant in I–O, on July 18, 1952.

The appellant complains, however, that "In 1953, when appellant was given another administrative appeal (from the December (November) 10, 1953 notice that he was retained in the undesired I–O classification) he *was not* given the 'special appellate procedures' to aid in determining his current status but was promptly reclassified in the same Class I–O by the appeal board on January 7, 1954".

The appellant relies heavily upon the case of Sterrett v. United States, 9 Cir., 1954, 216 F.2d 659, 663–665, which has been followed by this Court in Blevins v. United States, 9 Cir., 1954, 217 F.2d 506, 508–509, and in Shepherd v. United States, 9 Cir., 1954, 217 F.2d 942, 946.

The *Sterrett* case, however, can be distinguished on its facts from the one at bar. In *Sterrett*, the Department of Justice returned the registrant's files to the Appeal Board without conducting a hearing because it construed Section 6(j) of the Universal Military Training and Service Act, as amended, 50 U.S.C.A. Appendix, § 456(j), to mean that the Department could assume jurisdiction only "if such claim *is not sustained* by the local (draft) board * * *." 216 F.2d at page 662. The opinion thus summarized the Government's position:

"Says the Government: the appellant whose claim had been sustained by the local board, was not appealing *for* a conscientious objector classification but appealing *from* a conscientious objector classification for in each of these cases the registrant was claiming classification as a minister entitled to be classified in Class IV–D." At page 662.

In *Sterrett*, the Court stated the two appellants' position as follows:

"Appellant (sic) urges therefore that the words in § 6(j) reading: 'Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing', must be construed to mean that whenever any appeal presents the conscientious objection question to the appeal board, it must refer the claim to the Department of Justice."

This Court concluded its opinion in the following language:

"In view of what we here hold not only was the Department of Justice in error in refusing to hold a hearing but so much of the Regulation as would purport to deny such a hearing to these registrants was itself unauthorized by the statute." At page 665.

The judgments in the two cases were reversed.

In the instant case, however, the appellant, as we have seen, concedes that he was given the full "special appellate

procedures" in his first case, in which he was acquitted. He even carefully spells out the various steps in the Department's investigation and recommendation. And the appellant likewise concedes that after his acquittal in the first case, he was placed into Class I–O, as a "complete" conscientious objector.

■ We do not read *Sterrett* to teach that, no matter how many appeals a registrant may choose to take, even, as here, from a *favorable* action by the Local Board, he may demand, as of right, a succession of Departmental hearings, *ad infinitum*. Not even Jehovah's Witnesses should be permitted to monopolize the time and efforts of the Department of Justice!

5. *The Appellant's Statutory or Constitutional Rights Were Not Violated by the Local Board's Refusal to Hear His Witnesses*

The appellant testified that two of his prospective witnesses before the Local Board "weren't allowed to come in". Although the appellee suggests that the record on this point is "somewhat ambiguous", the appellant's statement just quoted was not contradicted, and for the purposes of this appeal we accept it as true.

■ Nevertheless, a refusal by a Local Board to hear a registrant's proffered witnesses is not a violation of his Constitutional or statutory rights. Proceedings before a Selective Service Board are not a trial. In United States v. Nugent, 1953, 346 U.S. 1, 8, 73 S.Ct. 991, 995, 97 L.Ed. 1417, Mr. Chief Justice Vinson said:

"The registrant must first look to his local board for the relief he claims; he must convince this body —composed of representatives of his own community—of the depth and sincerity of his convictions. He must fill out forms, calculated to put him to the test; he must supply any additional detailed information which may be necessary for a searching investigation of his claim; and, if he or his local board demands it, he may appear in person to explain his position to the persons charged with determining its validity."

The late Chief Justice then cited, with apparent approval, 32 CFR (1949 ed.) part 1624, *the very first section of which* contains the following sentence, conveniently ignored by the appellant:

"*1624.1 Opportunity to appear in person.*

\* \* \* \* \*

"(b) No person other than a registrant shall have the right to appear in person before the local board, but the local board may, *in its discretion,* permit any person to appear before it with or on behalf of a registrant: \* \* \*." (Emphasis supplied.)

■■ In his brief, the appellant insists that "It is unquestionable that the regulation gives the registrant, appearing before the local board the right to discuss, point out, etc., etc. Sec. 1623.2 (b) so provides." The section to which the appellant refers, however, deals *exclusively* with the *registrant's* appearance before the board: it in no way relaxes the provision of Section *1624.1,* to the effect that "No person other than a registrant shall have the right to appear in person before the local board," etc.

Similarly, the case of Davis v. United States, 6 Cir., 1952, 199 F.2d 689, stressed by the appellant, deals *exclusively* with the registrant's right to appear in person before the local draft board, which right, of course, was freely given to the present appellant. The matter of a registrant's *producing witnesses before the board* is not mentioned in Davis, and the case is therefore not in point.

The two "mature" men whom the appellant offered as witnesses were Hendrickson and Brese. As we have seen, however, both these men, together with others, had written letters in the appellant's behalf, which unsworn statements had been submitted to the Local Board. Such unsworn statements could be and were considered by the Board. The ap-

**304**

pellant was therefore not prejudiced by not being permitted to have those men appear before the Board in person.

### 6. *Conclusion*

After a careful examination of the transcript of the trial in the court below and a minute scrutiny of the voluminous exhibits presented to the Local Board and the Appeal Board, we are of the opinion that all the appellant's Constitutional, statutory, and administrative rights have been duly safeguarded.

The judgment is affirmed.