Stanley Oliver STEELE, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 5137.

United States Court of Appeals First Circuit.

Heard Oct. 3, 1956.

Decided Dec. 21, 1956.

Hayden C. Covington, Brooklyn, N. Y., with whom Clarence P. Kudisch and Arthur Jaffe, Boston, Mass., were on the brief, for appellant.

Thomas P. O'Connor, Asst. U. S. Atty., Boston, Mass., with whom Anthony Julian, U. S. Atty., Boston, Mass., was on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

The appellant was indicted by a grand jury in the court below for failure to report to his local draft board for assignment to civilian work contributing to the maintenance of the national health, safety or interest, in violation of § 12 (a) of the Selective Service Act of 1948, 62 Stat. 622, 50 U.S.C.A.Appendix, § 462 (a). He pleaded not guilty and waived his right to trial by jury. At the close of the evidence introduced at the trial he filed a motion for judgment of acquittal, which the court took under advisement, and after filing an opinion denied. The court then found the appellant guilty as charged and entered judgment sentencing him to imprisonment for the term of one year. He thereupon took this appeal.

The appellant registered with his local draft board early in 1951 and the board sent him a classification questionnaire, SSS Form 100. He filled out this form and returned it, indicating therein that he was unmarried, that he was employed full time as a turret lathe operator, and that he was conscientiously opposed to participation in war in any form. He did not claim to be a minister or student preparing for the ministry. Upon receipt of this questionnaire the local board sent the appellant a Special Form for Conscientious Objector (SSS Form 150), which he completed and returned. On this form he indicated that he was affiliated with the sect known as Jehovah's Witnesses, and that because of his religious training and belief he was conscientiously opposed not only to participation in war but also to non-combatant training and service in the armed forces. And he signed a statement on the form to the effect that he realized that by taking that stand he might subject himself to 24 consecutive months' service at "such

civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate." He also indicated on the form that he had been a member of the cadet corps when in high school and that although he definitely did not believe in the use of weapons, nevertheless, if he should find himself in a position where he had to protect himself, he "instinctively would do so."

The local board gave the appellant a hearing for the purpose of determining whether he was entitled to classification as a conscientious objector and following the hearing rejected his claim and classified him I–A, i. e. as available for general military service. The appellant was notified of this action, he appealed, and on January 25, 1952, the Appeal Board, considering the entire file, classified him I–A–O, that is, as a conscientious objector but one available for induction into the armed forces for non-combatant training and service. The appellant was promptly notified of this action and three months later, in April, 1952, he submitted himself on orders of his local board to a physical examination. He was found mentally and physically acceptable for military service, was so notified under date of May 1, 1952, and on January 16, 1953, he was mailed an order to report for induction on February 20, 1953. On receipt of this order he wrote the board that he would not report for induction as ordered. The board acknowledged receipt of this letter and requested the appellant to appear for a hearing on January 29. He did so, and at that hearing he told the board that he had been going to meetings of Jehovah's Witnesses for about three years, and that recently he had been doing work as a minister by preaching during the day to fellow employees and also preaching on Saturdays and Sundays whenever he found time. Wherefore he contended that he was entitled now to the ministerial classification of IV–D which would exempt him from service of any kind, civil or military. The local board rejected his claim and told him that he had "no alternative but to report for induction" as ordered, whereupon he wrote a letter of protest to the State Director of Selective Service.

The next official action occurred on February 18, when the local board by order of the State Director of Selective Service postponed the appellant's induction to permit review of the entire file for the purpose of considering his claim for exemption as a minister of religion. The local board gave the appellant a hearing on this claim on April 15, 1953. At that hearing the principal matter under consideration was his ministerial activities but it is clear that he took occasion then to tell the local board for the first time that he had married and that his wife was pregnant. The appellant testified that he made this disclosure in support of a claim for a dependency deferment and that he asked the board for that reason either to classify him in III–A under parenthood deferment or else in IV–D as a minister of religion, whichever classification it thought most appropriate for his situation. One of the members of the local board, however, testified that when the factor of a pregnant wife was introduced, he strongly urged the appellant to submit proof in the form of a medical certificate so that classification in III–A would automatically follow, but that the appellant refused to do so, saying: "I do not want a deferment on marriage, I want it based on my being a minister." [1]

Following this hearing, the local board, rejecting the appellant's claim for classification in IV–D as a minister of religion, put him in I–O, the classification appropriate for registrants who objected to any military service either as a combatant or as a non-combatant. The appellant, when notified of this action, wrote a letter to his board protesting this classification and the board gave him a fourth hearing on April 29, 1953. At this hear-

---

1. Being in I–A–O at the time, he was subject to induction into the armed forces, although not for combatant service, and hence he qualified for III–A classification. See Klubnikin v. United States, 9 Cir., 1956, 227 F.2d 87, 89, 90.

ing the appellant again pressed for the ministerial exemption and in fact stated that if he did not receive it and remained I–O he would refuse to obey an order to report for assignment to civilian work. Thereupon the board classified him I–A as available for general military service. Upon notice of this action he wrote a letter to the Appeal Board, sending a copy to his local board, in which he primarily pressed his arguments for a IV–D classification but nevertheless made reference to his family responsibilities. He wrote: "In my particular case I am married and my wife is pregnant. In order to provide the necessities of life for my wife and myself it is necessary that I work five days a week." On May 12, 1953, the appellant's file was forwarded once more to the Appeal Board, but it was not until December 11 of that year that it voted unanimously to classify him in I–O.

During this interval, while the appellant was pressing for a IV–D classification, § 1622.30 of the Selective Service Regulations was amended by Executive Order No. 10469 of July 11, effective July 15, 18 Fed.Reg. 4107, U.S.Code Congressional and Administrative News 1953, p. 1029, to provide that in order for a registrant to obtain III–A parenthood deferment classification formal proof of parenthood or wife's pregnancy must be submitted before August 25, 1953. There is no evidence that the board notified the appellant of this change in the Regulations or that it came to his attention in any other way. At any rate, the appellant apparently did not give up his attempt to obtain IV–D classification until early in 1954 when he began specifically to urge his claim for dependency deferment. When he did so, however, the local board rejected his claim as untimely

and furthermore found that no severe financial hardship would be imposed upon him or his family were he required to do civilian work contributing to the national interest. It therefore ordered him to report for assignment to such work on August 30, 1954. He refused to obey this order and his indictment followed.

This foregoing statement of facts, although long, is not exhaustive. It is sufficient, however, to provide the basis for consideration of the only issue on this appeal which in our opinion requires discussion. That issue is whether the admitted failure to appoint advisors to registrants, and to post their names and addresses conspicuously in the local board office, as required by Selective Service Regulations § 1604.41(a), quoted in the margin as it read during the applicable period,[2] renders invalid the local board's order directing the appellant to report for assignment to civilian work and vitiates his conviction for failure to obey that order.

Certainly nothing in the Constitution requires that a registrant be provided with free advice and assistance either in preparing questionnaires and forms for submission to his local draft board or with respect to other matters relating to his liabilities under the selective service law. The appellant's right to aid in his dealings with the Selective Service System was conferred only by the Regulation cited and quoted above which, concededly, had the force of a statute. Thus the admitted failure to comply with the Regulation deprived the appellant of no right guaranteed to him by the Constitution. It is not, therefore, comparable to a refusal to permit one accused of crime in a federal court to have the assistance of counsel for his defense. The

2. "Advisors to registrants shall be appointed by the Director of Selective Service upon recommendation of the State Director of Selective Service to advise and assist registrants in the preparation of questionnaires and other selective service forms and to advise registrants on other matters relating to their liabilities under the selective service law. * * * The names and addresses of ad-

visors to registrants within the local board area shall be conspicuously posted in the local board office." (The section was later amended to provide that advisors "may be appointed" instead of "shall be appointed." Exec.Order No. 10594, 20 Fed.Reg. 735, Feb. 3, 1955, U.S.Code Congressional and Administrative News 1955, p. 1055.)

failure to appoint advisors and to post their names and addresses conspicuously in the local board's office constituted a breach of one of the rights conferred upon the appellant as a registrant only by legislative grace. Hence that failure standing alone is not ground for setting aside the judgment of sentence. The failure to comply with the mandate of the Regulation must be coupled with prejudice to the appellant before that result is achieved. Martin v. United States, 4 Cir., 1951, 190 F.2d 775, 779; Knox v. United States, 9 Cir., 1952, 200 F.2d 398, 401; Uffelman v. United States, 9 Cir., 1956, 230 F.2d 297, 298–302. The issue then narrows down to one of prejudice to the appellant by failure to appoint advisors as required by the Regulation.

The District Court concluded that the appellant had failed to show that he had suffered any prejudice because the members of the local draft board, the clerk of the board and the appeal agent either had given, or were available to give, him all the advice and assistance he required or was willing to accept.

We think the District Court placed a greater burden of proof on the appellant than he is required to bear.

■ This is a criminal case, and in such cases, because of the severity of the sanction involved, courts traditionally have been hyper-cautious lest injustice be perpetrated. In implementing this policy of caution where personal liberty is at stake, courts of the common law tradition have imposed a strict burden of proof upon the prosecution. The essential elements of the prosecutor's case must be proved "beyond a reasonable doubt." While it does not appear unjust in a case such as this to place upon the defendant the burden of showing that a procedural safeguard has been denied him, once this fact has been established, it would seem only a natural application of the traditional burden of proof to require that the prosecution prove "beyond a reasonable doubt" that the denial of the procedural safeguard has not prejudiced the defendant. Moreover, in a comparable situation, the Supreme Court in

Simmons v. United States, 1955, 348 U.S. 397, 405, 406, 75 S.Ct. 397, 402, 99 L.Ed. 453, apparently applying the above principle, said that a criminal defendant deprived by his draft board of a specific right "need not specify the precise manner in which he would have used this right—and how such use would have aided his cause—in order to complain of the deprivation."

Certainly under § 1604.41(a) of the Regulations, supra, as it read at the crucial time, the appellant had the right to the advice and assistance of advisors, and admittedly he was deprived of that right by the failure to appoint such persons. We take the view that the burden is on the Government to establish as part of its case that deprivation of the right to the counsel and aid of advisors could in no way have harmed the appellant. In this we think the Government has failed, for the evidence, as we read it, indicates a reasonable possibility, if not probability, of prejudice to the defendant-appellant, and that we believe is all that is required to entitle him to acquittal.

It is true that the local board with highly commendable patience gave the appellant hearing after hearing at which he was accorded every opportunity to present his contentions. Indeed, it seems almost to have leaned over backward. And it is also true that the clerk of the board was entirely helpful and cooperative and that the appeal agent to the appellant's knowledge was available to do his part if asked. But the fact remains that the appellant was not informed and did not on his own discover the amendment of the Regulations in mid-July, 1953, putting a deadline on the time within which he could apply for a dependency deferment to which, as already pointed out, he was at that time entitled. Perhaps he was then primarily concerned with obtaining exemption as a minister of religion. But it does not follow that had he known that he must apply for deferment on the ground of dependency and submit his proofs by August 23, 1953, or lose his right to III–A classification, that he would not have done so

instead of risking all on his attempt eventually to persuade the selective service authorities that he was indeed a minister. Furthermore there is a significant possibility that had advisors been available and had the appellant consulted one of them, he would have been convinced much sooner of the futility of pursuing his IV–D claim and made timely application in proper form for deferment on the ground of dependency. It is also relevant to this latter point that the same board members who advised Steele during the April, 1953, hearings that the IV–D ministerial exemption claim was not valid had been overruled by higher authorities in the two previous decisions they had made with respect to Steele. It should not be surprising then that Steele might discount their advice as coming from a source that was apparently less than expert and possibly hostile.

██ It seems to us on the facts disclosed and found that there is substantial reason for believing that the appellant was prejudiced by his ignorance of the amendment of the Regulations putting a time limit on his right to apply for III–A parenthood deferment classification, and that had he consulted an advisor he would have discovered the time limit in season to have made proper application for that classification. Under these circumstances we cannot say that he could not have been prejudiced by the failure to appoint advisors and post their names and addresses in the local board office. He should at least have been afforded an opportunity to obtain the advice and assistance the Regulations at the time required that he be given. See United States v. Howe, D.C.Mass.1956, 144 F. Supp. 342; United States v. Schwartz, D.C.E.D.N.Y.1956, 143 F.Supp. 639. The appellant's motion for judgment of acquittal should have been granted.

A judgment will be entered vacating the judgment of the District Court and remanding the case to that Court for further consistent proceedings.

MAGRUDER, Chief Judge (concurring).

I concur, except that I think it is putting it too strongly to say that the prosecution must prove "beyond a reasonable doubt" that the denial of the procedural safeguard did not prejudice the defendant.

I may add that I am not sure I understand why any judicial review at all is available here, under the decisions in Falbo v. United States, 1944, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, and Mason v. United States, 9 Cir., 1955, 218 F.2d 375. But I pass the point by on the assumption that the government would have raised the issue if there were anything to it.

HARTIGAN, Circuit Judge (dissenting).

It seems that the main question in this case is whether the appellant had the burden of establishing that the local board's failure to appoint advisors to registrants and to post their names and addresses conspicuously in the local board office, as required by Selective Service Regulations § 1604.41(a), resulted in prejudice to him. I believe, as the district court concluded, that the burden was on appellant, and, further, that appellant failed to show that he suffered any prejudice due to the aforementioned failure of the local board to comply with the regulations.

Support for my conclusion that the burden of proof was on appellant can be found in Rowton v. United States, 6 Cir., 1956, 229 F.2d 421, 422, certiorari denied, 1956, 351 U.S. 930, 76 S.Ct. 788. In the Rowton case, where the registrants, after having been convicted for refusal to do civilian work in lieu of induction, contended on appeal that their local boards' failure to post the names of advisors in compliance with the regulations denied them procedural due process of law, the Sixth Circuit, in affirming the convictions, stated, 229 F.2d at page 422: "Nowhere in the record do appellants [registrants] actually show that the failure of the local boards to post the names of advisors worked to their prejudice in any manner. * * *" See also United

States v. Mekolichick, 3 Cir., 1956, 234 F.2d 71, certiorari denied 77 S.Ct. 147.

The Simmons case, upon which my brethren rely in holding that the burden of proof was on the Government, in my opinion, presents a different situation from the facts here. There the registrant was denied a resume of the Federal Bureau of Investigation report which resulted in his being deprived of a hearing as required by statutory provision. Here the failure of the local board concerned a regulation which soon after was made optional with the local board.[1] I submit this was "an incidental infringement of technical rights", see Simmons v. United States, supra, 348 U.S. at page 406, 75 S.Ct. at page 402, which could not result in placing the heavy burden of proving a negative on the Government. See also United States v. Mekolichick, supra, 234 F.2d at page 74 (where failure to post advisors was stated as being a "mere technical irregularity").

I turn now to the question of whether the appellant sustained his burden of proof by showing that the aforementioned failure of the local board resulted in prejudice to him.

From the time of his registration under the draft law early in 1951 to the time he was ordered to report for civilian work in August 1954, the appellant had six hearings before the local board and had his case before the appeal board on two occasions. The members of the local board testified that throughout this period they were available to the appellant for the purpose of advising him as to his duties and his rights and at no time did they refuse to give him any advice.

Although appellant had been married since September 1952, he did not inform the board of this fact until the hearing of April 15, 1953. The transcript of that hearing states: " * * * When [appellant was] asked why he had never before informed the Board of his marital status, he stated that he is not seeking that type of deferment but is asking for the same exemption that is usually granted to ministers of religion." A board member testified that at the same hearing he unsuccessfully "pleaded with" and "begged" appellant to submit proof of his marriage so that he might get a dependency deferment. That appellant continued in his determination to qualify for a ministry exemption, and none other, is evidenced by a letter dated May 8, 1953 where he mentioned that his wife was pregnant merely as a subsidiary item in his argument for a ministry exemption.

The record also reveals that on at least five occasions appellant received SSS Form No. 110—Notice of Classification —in which form he was apprised that for advice he could see his Government appeal agent.

In view of the above evidence I believe that appellant was determined in obtaining an exemption as a minister of religion and on that ground alone. Had he been interested in a dependency deferment prior to August 23, 1953, there were available to him for advice the members of the local board and the appeal agent who had been helpful and cooperative concerning all prior inquiries made by appellant. It is difficult to conclude that the posting of a list of advisors by the board would have altered the appellant's determination or provided any better source of information than he had. For it must be noted that only by consulting the advisors between July 13, 1953 and August 25, 1953, would appellant have learned of the deadline concerning submission of proof of parenthood.

Therefore, I conclude that the appellant did not establish that the local board's failure to appoint advisors and to post their names in its office resulted in prejudice to him.

I would affirm the judgment of conviction of the district court.

1. See footnote 2 in the opinion of the court.