James Wesley **BRADSHAW**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 5422.

United States Court of Appeals
Tenth Circuit.

Jan. 30, 1957.

Rehearing Denied Feb. 26, 1957.

**182**

W. H. Erickson, Denver, Colo., and Hayden C. Covington, Brooklyn, N. Y., for appellant.

Donald E. Kelley and John S. Pfeiffer, Denver, Colo., for appellee.

Before PHILLIPS, MURRAH and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Appellant was charged by indictment with knowingly failing, refusing and neglecting to report to his local board under the provisions of the Universal Military and Service Act for assignment to civilian work, in lieu of induction, as a conscientious objector to combatant and noncombatant service in the armed forces. 50 U.S.C.A.Appendix, §§ 456(j), 462(a). He entered a plea of not guilty and waived trial by jury. He was tried, convicted and sentenced by the District Court for the District of Colorado and now appeals.

Appellant concedes that he failed to report after having been ordered to do so by Local Board No. 4 in the City and County of Denver, but contends that he was denied due process under the Fifth Amendment to the Constitution of the United States in the procedures concerning his classification and that therefore the acts of the board were a nullity. He sought a 4–D classification which would exempt him as a minister from training and service, 50 U.S.C.A.Appendix, § 456(g), but received instead a 1–O classification which relieves him as a conscientious objector from military combatant and noncombatant service, and requires a period of service in civilian work contributing to the maintenance of the national health, safety or interest. 50 U.S.C.A.Appendix, § 456(j).

Appellant, whose date of birth was September 9, 1932, stated in his classification questionnaire that he was a minister of the Jehovah's Witnesses and that his ordination occurred on August 5, 1941. From that date to October 1, 1950, he was a minister known as "Company Publisher". For the next eleven months he was a full-time minister but then took a "leave of absence" to take care of family expenses. He works approximately forty hours a week as a machinist or truck driver in order to support his family but also devotes forty hours a week to ministerial activities, spending one-half to two-thirds of that time studying at home and the remainder visiting and talking with members of the congregation and doing missionary work in the field. He has attended the Theocratic Ministerial School of Jehovah's Witnesses in Denver and the Brooklyn Headquarters of the Watchtower Bible and Tract Society. He is recognized as a minister in his sect, makes door to door visitations, and at times makes speeches at meetings of Jehovah's Witnesses. His file included two affidavits supplied by him to corroborate his ministry.

Appellant first appeared before his local board on November 5, 1951, at which time the board denied his request for a 4–D classification and placed him in a 1–O classification. There is no transcript of this hearing in the file nor is there a summary of the oral testimony presented; a memorandum simply shows that the registrant appeared and that his request was denied. He testified in the District Court:

"Well, I believe at that time I tried to present scriptural proof of my ministerial status and requested that I be placed in classification 4-D as a minister. At that time the board indicated to me that they thought I was extremely lucky to be a 1-O as other nineteen year olds were being sent to Korea which was the war at that time and they indicated that whatever the evidence I presented it wouldn't influence them in any degree."

He appealed his classification to the appeal board, again asserting his claim to be exempt from induction as a minister. That board preliminarily determined that appellant was not entitled to classification as a conscientious objector (1-O or 1-A-O) and thereupon forwarded his file to the Department of Justice.[1] After investigation by the Federal Bureau of Investigation, the matter was duly heard by a Department of Justice hearing officer. His report was filed with the Department. Upon advice of departmental counsel, appellant's file was returned to the appeal board without recommendation and with a report stating that, since the question involved was not whether the registrant should be sustained in his claim that he is a conscientious objector, there was no occasion for referral to the Department of Justice. The file as returned to the appeal board did not include the F.B.I. reports, the report of the hearing officer, affidavits submitted by appellant, nor correspondence in regard thereto.

On February 10, 1953, the appeal board unanimously set Bradshaw's classification as 1-O. He appeared before the local board on April 20, 1953, and again on August 4, 1953, but on each occasion refused to discuss the initiation of a work program. On September 14, 1954, the local board wrote to the State Director requesting a sixty-day postponement for Bradshaw because his wife was expecting a child. In the meantime Bradshaw moved his family to California and inquired of the California Selective Service authorities about jobs which would meet the requirements of civilian service. On January 26, 1955, he wrote to the Denver board saying that he had found "difficulty in finding suitable work or work which has wages high enough to cover the necessities of life for me and my family."

To this letter the board replied on March 31, 1955, advising him that if he could not find approved work in California within two weeks the board would order him to perform hospital work in the Denver General Hospital. On April 17, 1955, Bradshaw wrote the board as follows:

"In regard to my employment in suitable work of national importance. I have found none that would pay the expenses of life and I must insist on a job that will pay for these as you know I have two dependents besides myself that makes finding suitable work difficult."

On April 27, 1955, the board ordered Bradshaw to appear before it on May 16, 1955, for assignment to hospital work at the Denver General Hospital. He failed to appear or report. The instant prosecution followed.

■ Induction into the armed services, the allowance of exemptions, and the determination of various classifications are matters peculiarly within the field of Congressional activity and Congress has given the power to make decisions concerning facts of a particular case to the administrative facilities of the Selective Service. 50 U.S. C.A.Appendix, § 460 provides for the agencies, the local boards and the appeal boards, grants them power to hear and determine all questions or claims concerning exemption from training, and makes their decisions final. The Supreme Court has held in interpreting this section, "The provision making the decisions of the local boards 'final' means

---

1. See C.F.R. 1626.25, infra.

to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified." Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 427, 90 L.Ed. 567.

■■■ Before the local board the registrant bears the burden of proving his entitlement to exemption as a regular or duly ordained minister of religion. The subjective beliefs of the registrant and his church cannot alone furnish the proper criteria for the determination of the question. Mere membership in an organization whose creed includes the conviction that all who sincerely work in the sect are ministers does not exempt the registrant from induction into military service. The test must be based upon all of the facts known as to whether or not the claimant devotes his time to preaching and teaching in the manner of a "vocation", whether or not the functions which he performs are those normally performed by ministers of other religions and whether or not he bears that relationship to a congregation ordinarily occurring between a cleric and his flock. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132.

■■■ The courts have the power to overturn the findings of the draft boards only where the court concludes that such findings have no basis in fact. Estep v. United States, supra; Dickinson v. United States, supra; Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.

The trial court in the present case allowed the accused to testify and then present other witnesses as to his status as a minister, over objections, and observed in a well-reasoned opinion:

"In my opinion the board had a rational basis for its classification.

The defendant claims to have been ordained before he was nine years old. His questionnaire shows secular work for several employers. While the religious attitude of the defendant is commendable and his study of the Bible and loyalty to his people are worthy, the fact remains that the denial of a 4–D classification to an individual who claims to have been a minister since the age of eight, who admittedly has engaged in considerable secular employment, and who devotes to home study one-half to two-thirds of the forty hours per week spent on ministerial activities, cannot be said to be irrational and without basis in fact."

Recognizing the fact that the determination of his proper status is primarily one for the administrative bodies created by the Selective Service Act, appellant contends that because of procedural irregularities he was denied a full and fair hearing during his personal appearance before the local board and that hence his file did not reflect a complete record of his evidence for review by the board of appeals. He complains that due process was denied him in that (1) the local board failed to have posted conspicuously the names and addresses of advisors to registrants, (2) that the local board discouraged him from producing evidence, (3) that the personal appearance procedure prescribed by Sec. 1624.2(c) of the Selective Service Regulations is in itself a denial of due process, and (4) that the Department of Justice improperly withheld from the appeal board evidence submitted to the hearing officer.

### The Failure to Post Names of Advisors and to Accept Further Evidence

Two recent cases have considered the precise question of whether the failure to post the names and addresses of advisors deprives a registrant of an essential right in procedural due process. Rowton v. United States, 6 Cir., 229

F.2d 421; Steele v. United States, 1 Cir., 1956, 240 F.2d 142, 145. Although reaching opposite results under the two fact situations, both courts hold that such an error in procedure should be disregarded unless it is shown that the substantial rights of the defendant were affected by the board's omission. The Rowton case relies upon Rule 52(a), Federal Rules of Criminal Procedure, 28 U.S.C.A., but the claimed error occurred prior to the institution of criminal proceedings and the question of due process is raised for the purpose of determining the validity of the board's order in the absence of full compliance with Selective Service regulations. We prefer the reasoning in the Steele case:

"Certainly nothing in the Constitution requires that a registrant be provided with free advice and assistance either in preparing questionnaires and forms for submission to his local draft board or with respect to other matters relating to his liabilities under the selective service law. * * * The failure to appoint advisors and to post their names and addresses conspicuously in the local board's office constituted a breach of one of the rights conferred upon the appellant as a registrant only by legislative grace. Hence that failure standing alone is not ground for setting aside the judgment of sentence. The failure to comply with the mandate of the Regulation must be coupled with prejudice to the appellant before that result is achieved * * *."

This holding is in accord with other cases considering other errors in classification procedure. See Martin v. United States, 4 Cir., 190 F.2d 775; Tyrell v. U. S., 9 Cir., 200 F.2d 8; Uffelman v. U. S., 9 Cir., 230 F.2d 297.

The Steele and Rowton cases are further in conflict in the placing of the burden of showing that prejudice did or did not result to the registrant through the board's failure to post the names of advisors. The Steele case holds that the burden is upon the government to demonstrate that the defendant was not prejudiced as a part of its case. The Rowton case, on the other hand, asserts that since defendant relies upon irregularities in classifications proceedings as a defense to a criminal action, he must bear the burden of showing prejudice. In the Steele case, the record demonstrated that the registrant could have obtained a dependency deferment had he been properly advised; under those circumstances, it would appear that injury was shown regardless of who had the burden of proof.

In the present case, the only claim made is that because appellant was not counseled that he had a right to enter further evidence, he was discouraged from so doing by the board's indication that it would not consider anything further. He argues that because he was not so advised, his file as reviewed by the board of appeals was incomplete.

 The statement attributed to the board by appellant's testimony cannot be said to reveal prejudice and bias in itself which would demonstrate improper methods of classification as in Niznik v. United States, 6 Cir., 173 F.2d 328. The local board is justified in setting a time limit upon the presentation of evidence by registrant, 32 CFR 1624.2(b), and refusing to hear and transmit merely cumulative evidence, Niznik v. United States, supra. The question of whether or not a man is a regular or duly ordained minister of religion is more capable of objective deduction from facts presented than is the question of the sincerity of his beliefs as a conscientious objector, Dickinson v. United States, supra, and hence, if the file represents clearly the position of appellant and the facts which demonstrate it he cannot complain that he was not allowed a repetition of those facts.

 The trial court permitted appellant to present all his evidence and found that he was not deprived of the

right to present new evidence influencing his classification by the board and hence there was no denial of due process in the conduct of his hearing. Neither the transcript of the trial nor appellant's brief on appeal indicate that this finding was error.

### The Constitutionality of Section 1624.2(c) of the Selective Service Regulations

■ The contention that Section 1624.2(c) of the Selective Service Regulations is a deprivation of a right to a full and fair hearing is without merit. Section 1624.2(a) provides that a registrant, after classification, may appear before the local board and (b) of the same section provides that the registrant may discuss his classification, direct attention to any information which be believes has been overlooked, and present further information. Paragraph (c) is as follows:

"After the registrant has appeared before the member or members of the local board designated for the purpose, the local board shall consider the new information which it receives and, if the local board determines that such new information justifies a change in the registrant's classification, the local board shall reopen and classify the registrant anew. *If the local board determines that such new information does not justify a change in the registrant's classification, it shall not reopen the registrant's classification.*" (Emphasis added.)

Appellant regards paragraph (c) as a nullification of paragraph (b) permitting him to discuss his classification with the board regardless of the presentation of new evidence; he contends that under the emphasized portion of paragraph (c) the board was powerless to correct an error made in his classification without receipt of new facts. Classification is a factual determination to be made by the board and, if the board discovered, after classification of the registrant, that it had erred

in failing to give weight to a pertinent fact, it is given power to correct that error.

Section 1625.1 states that no classification is permanent; Section 1625.2 provides situations wherein the classification may be reopened and considered anew. The board may reopen upon its own motion, upon the request of the registrant or certain persons having an interest in his deferment, or upon the request of the government appeal agent. The request must be written and accompanied by "written information presenting *facts not considered when the registrant was classified,* which, if true, would justify a change in the registrant's classification."

The board has the further power of refusing to reopen the classification, under Section 1625.4, where the board is of the opinion that information accompanying the request has no bearing upon the classification either because the new facts presented are irrelevant to the determination or because it contains no facts *other than those considered* at the time of classification.

Therefore, it is clear that paragraph (c) is not to be construed as a procedural or substantive limitation upon the powers of the board to reclassify and that the word "information" as used in its context is to be given its common and usual meaning, i. e., knowledge or communicated intelligence. "New information" is not necessarily synonymous with "new facts", and the board may reopen and reconsider its former determination whenever it appears that it erred in failing to consider all material facts available.

Appellant was permitted to appear in person before the local board, to discuss the classification in which he felt he belonged, to point out to them facts which they may have overlooked, and present any further information which he considered might have a bearing upon his classification. The mere fact that he failed to persuade them that they had not considered all the facts in making the classification does not

argue that their minds were closed to the possibility of reclassification. Nothing in the procedure followed indicates that appellant did not receive full consideration of the facts which he presented at his personal appearance along with everything which preceded the hearing.

### Referral of Appellant's File to the Department of Justice

The essence of Bradshaw's appeal from the action of the local board was complaint of that board's refusal to exempt him from military service under claim of ministerial status. He did not specifically attack his 1–O classification as an alternative. The appeal board, however, reviewed his classification de novo, and followed the same procedure as the local board in arriving at a determination of the proper classification. See Sterrett v. United States, 9 Cir., 216 F.2d 659; Cox v. Wedemeyer, 9 Cir., 192 F.2d 920; CFR 1626.26. On January 3, 1952, the appeal board preliminarily determined that Bradshaw was not entitled to classification as 1–O or 1–A–O nor (by implication) 4–D. Thereupon the appellant's file was forwarded to the Department of Justice by reason of the special provisions for investigations of the claims of conscientious objectors contained in 50 U.S.C.A.Appendix, § 456(j):

"* * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, *if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing.* The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, * * * The Department of Justice shall, after such

hearing, if the objections are found to be sustained, recommend to the appeal board * * *." (Emphasis added.)

At the time of the appeal board's transmittal of Bradshaw's file, the Selective Service Regulations of 1948 (as amended September 28, 1951) pertinent to the statute and the instant case provided:

"Section 1626.25(a) If an appeal involves the question whether or not a registrant is entitled to be sustained in his claim that he is a conscientious objector, the appeal board shall take the following action:

"(1) * * *

"(2) If the appeal board determines that such registrant is not eligible for classification in either a class lower than Class 1–A–O or in Class 1–A–O, the appeal board shall transmit the entire file to the United States Attorney for the judicial district in which the office of the appeal board is located for the purpose of securing an advisory recommendation from the Department of Justice.

"(3) * * *

"(4) If the appeal board determines that such registrant is not entitled to classification in either a class lower than Class 1–O or in Class 1–O, it shall transmit the entire file to the United States Attorney for the judicial district in which the office of the appeal board is located for the purpose of securing an advisory recommendation from the Department of Justice.

"(b) No registrant's file shall be forwarded to the United States Attorney by an appeal board and any file so forwarded shall be returned, unless * * * the record shows and the letter of transmittal states that the appeal board reviewed the file and determined that the

registrant should not be classified in either Class 1–A–O or Class 1–O * * *."

Bradshaw's file was apparently misplaced for a period of time and it was not received by the hearing officer for nearly a year. Hearing was held on January 6, 1953. During that time, Section 1626.25 of the Selective Service Regulations was amended as of June 18, 1952, particularly paragraph (a)(2) which then read:

"*If* the registrant has claimed, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and by virtue thereof to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces, and, *the local board has classified the registrant in Class I–O, the appeal board shall proceed with the classification* of the registrant. *If*, in such a case, *the local board has classified the registrant in any class other than Class I–O, the appeal board shall transmit the entire file to the United States Attorney* for the Federal Judicial district in which the appeal board has jurisdiction for the purpose of securing an advisory recommendation from the Department of Justice." (Emphasis added.)

This change in the regulation was made, the government urges, to bring it into conformity with the statute and to allow a Justice Department hearing only where the local board has placed the registrant in a class other than 1–O. For this reason, Bradshaw's file was returned to the appeal board with the statement that the hearing officer did not have jurisdiction to hold a hearing. The hearing officer's report, favorable to Bradshaw's conscientious objector claim, was not submitted to the board; nor were affidavits which he had filed at the time of the hearing and F.B.I. reports. However, the appeal board finally classified him, as had the local board, 1–O.

Divergent views exist relative to the right of an appeal board, in view of 50 U.S.C.A.Appendix § 456(j), supra, and the applicable regulations, to review and raise a registrant's classification of 1–O granted by a local board. Certain it is that a registrant cannot be deprived of a 1–O classification granted by another board without his file first being referred to the Justice Department. Bates v. United States, 348 U.S. 966, 75 S.Ct. 529, 99 L.Ed. 753. And certain it is that this special hearing procedure is available only to conscientious objectors to service. As stated in United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 996, 97 L.Ed. 1417:

"* * * Congress was under no compulsion to supply this auxiliary service—to provide for a more exhaustive processing of the conscientious objector's appeal. Registrants who claim exemption for some reason other than conscientious objection, and whose claims are denied, are entitled to no 'hearing' before the Department. Yet in this special class of cases, involving as it does difficult analyses of facts and individualized judgments, Congress directed that the assistance of the Department be made available whenever a registrant insists that his conscientious objection claim has been misjudged by his local board. Observers sympathetic to the problems of the conscientious objector have recognized that this provision in the statute improves the system of review by helping the appeal boards to reach a more informed judgment on the appealing registrant's claims."

Since the appeal board ultimately restored Bradshaw's classification of 1–O we are not called upon to determine whether the referral of his file to the Department of Justice was required or prohibited, or whether or not the Justice Department properly refused jurisdiction. The referral would in any case be limited to determination of Bradshaw's sincerity as a conscientious ob-

jector. All matters submitted by Bradshaw to the Justice Department were submitted for the purpose of receiving a favorable report from the Department. No report was made, jurisdiction was denied, but still Bradshaw was found to be sincere. A favorable report from the Department of Justice, including all the supporting data, could not have availed appellant more upon the question of his sincerity, and the report could not search or have any bearing upon his claimed status as a minister.

There is no error. The judgment is affirmed.

MURRAH, Circuit Judge (concurring specially).

I concur in the affirmance of the judgment and in most of the opinion by my Brother LEWIS. Not being quite clear, however, of his reasoning on the right of appellant to a referral of his 4–D claim to the Department of Justice, I shall briefly state my views on that point.

As I interpret the applicable statutes and regulations, a registrant is entitled to a referral of his file to the Department of Justice for appropriate inquiry and hearing only if he is denied his claimed status as a conscientious objector. Since this appellant was given that status by his local board and ultimately by the appeal board, he cannot complain of the refusal of the board to consider the report of the hearing officer in the denial of his claimed ministerial status.

Section 6(g) of the Universal Military Training and Service Act, 62 Stat. 611, Title 50 U.S.C.A.Appendix, § 456 (g), specifically exempts duly ordained ministers of religion and bona fide theological or divinity students from training and service under the Act. Subsection (j) of the same Section provides that nothing in the Act shall be construed to require any person to be subject to combatant training "who, by reason of religious training and belief, is con-

scientiously opposed to participation in war in any form." And, it also provides that any person claiming exemption from combatant training and service because of conscientious objections shall, if such claim is not sustained by his local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of the appeal, the appeal board must refer any such claim to the Department of Justice for inquiry, hearing and recommendations.

In conformity with the statute, the selective service has, by appropriate regulations, prescribed classification 4–D for an ordained-minister or bona fide student; 1–AO for one conscientiously opposed to combatant training and service; and 1–O for one who is conscientiously opposed to even noncombatant training or service. 32 C.F.R. § 1622.2. The only requirement placed upon the latter is that "in lieu of induction" he shall be subject to "such civilian work contributing to the maintenance of the national health, safety or interest as the local board may deem appropriate * * *." Under applicable regulations, any person, whether minister or not, claiming to be conscientiously opposed to either combatant or noncombatant service or training is entitled to a referral of his file to the Department of Justice for appropriate hearing if his claim is not sustained by the board. If, however, the registrant's claim to either such classification is sustained by the local board, the appeal board must proceed accordingly. See 32 C.F.R. § 1626.25(a), as amended June 18, 1952.

Neither the statute nor the regulations purport to accord a registrant claiming a ministerial classification the right to a hearing before an officer of the Department of Justice. The underlying reasons for according a registrant claiming a conscientious objector status an auxiliary hearing and recommendation by an officer of the Department of Justice, and denying it to a registrant claiming a ministerial classification, are readily discernible when we consider that the ministerial status is determinable by

wholly objective tests, see Title 50 U.S. C.A.Appendix, § 466(g); 32 C.F.R. § 1622.43; while a conscientious objector status is determinable by a wholly subjective test, see Title 50 U.S.C.A.Appendix, § 456(j); 32 C.F.R. § 1622.11(b), for determining the sincerity of one claiming to be a conscientious objector to war in any form. In making the subjective determination "Observers sympathetic to the problems of the conscientious objector have recognized that this provision in the statute improves the system of review by helping the appeal boards to reach a more informed judgment on the appealing registrant's claims." United States v. Nugent, 346 U.S. 1, 9, 73 S.Ct. 991, 996. And so, I agree that the appellant cannot complain of the failure of the appeal board to consider the report of the hearing officer in the determination of his 4–D claim to a ministerial status.