**WELLS v. UNITED STATES.**

No. 11605.

Circuit Court of Appeals, Fifth Circuit.

Dec. 23, 1946.

Writ of Certiorari Denied March 3, 1947.

See 67 S.Ct. 867.

Hayden C. Covington, of Brooklyn, N. Y., and Tom S. Williams, of San Antonio, Tex., for appellant.

J. M. Burnett, U. S. Atty., and Henry W. Moursund, Sp. Asst. to Atty. Gen., both of San Antonio, Tex., and Holvey Williams, Asst. U. S. Atty., of El Paso, Tex., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

A jury being waived, the appellant was tried and convicted by the court below for failure to report to his local board for induction into the armed forces of the United States, in violation of 50 U.S.C.A.Appendix, § 311.

On November 30, 1942, the appellant filed his completed questionnaire with his local draft board in Leon County, Texas, where he was then living. The answers to his questionnaire showed that his age was then exactly eighteen years and seven months.

The board placed him in class 1-A, and he appealed from the order. On February 3, 1943, by unanimous vote the appeal board sustained the local board, and in due time the registrant was ordered to report for induction. At this point in the trial below, defendant voluntarily stipulated that he was later convicted and served a two-year sentence for failure to report. No objection was made to the admission of this evidence.

On December 12, 1945, after his release from prison, the appellant was mailed an order, dated December 7, 1945, to report for induction on December 17, 1945. Previously he had been given a preinduction physical examination by the armed forces, and found acceptable for military service. Again he willfully failed and refused to report because he claimed to be a minister of religion, that is, a member of the sect known as Jehovah's Witnesses.

The appellant claims that the order of December 7, 1945, directing him to report for induction was invalid because he was entitled to exemption under Section 5(d) of the Act.[1] The precise issue in the court below was whether the local board, acting within its jurisdiction, had given him a fair hearing. The presumption was that it had and that the order to report was valid, but it was open to the defendant to show that he had not been given a fair hearing and that the order was void. Under the Falbo case,[2] it was held that the order could be attacked only by habeas corpus after induction, but this ruling was modified in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, wherein it was held that the order was subject to attack by the defendant in a criminal prosecution for failure to obey the order. The court below found that the evidence was insufficient to show any arbitrary action on the part of the board, and further found that the evidence failed to show that the registrant was a minister within the meaning of the Act. This appeal is by the registrant from the judgment that followed his conviction.

The judicial review accorded the registrant in the district court was as broad as he asked to have it. The record reveals that on January 25, 1943, the local board received a communication from him stating that he had been wrongfully classified and wanted to appeal. The board immediately issued a subpoena for him to appear before it at a certain hour on January 26, 1943. The appellant, accompanied by his father, appeared before the board, two members being present. He testified on oath that he was a common laborer and obtained his living from his labor on his father's farm; that he was a family worker living in the house of his father; that he was a member of the sect known as Jehovah's Witnesses and that he was a minister for that sect.

When questioned as to his ordination as a minister, he said that all Jehovah's Witnesses were ministers and received no ordination or other formality to distinguish them as ministers. He stated that it was only a matter with the individual himself. If he believed himself worthy, then he was a minister. When asked if he received pay for his services, he said that he did, not. When asked if he regularly preached or held services, he said that he did not but did devote probably twenty hours per month to the sale and distribution of literature sent out by the Watch Tower Bible & Tract Society. He stated that he received no compensation for these services but obtained his living from his labor on the farm. He was then asked what type gasoline-rationing card he had and used in his work distributing this literature. He replied by saying that he had only an A-card but tried to save his gasoline from other uses on the farm so that he might be able to use it in the distribution of this literature.

The above is an extract from appellant's testimony before the local board, which was reduced to writing at the time, placed in his file, and transmitted to the appeal board with the other papers in his case. This was the only time that the appellant appeared before the board, though communications to it in writing were sent by him and others, which were placed in his file and sent up with his appeal. An abstract of what others said was also put in the file as follows: "Friends and neighbors of registrant have been contacted and all say that regis-

---

[1] 54 Stat. 885, 50 U.S.C.A. War Appendix, § 305(d).

[2] Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305.

trant is a good boy but none of them classify him as a minister. He is not so considered by any of the people in and around Marquez, Texas. Some of the former students of the Marquez Public School said that registrant was not known by his fellow students as a minister nor was he even considered religiously inclined. He was just another student in high school whose grades were not excellent."

On the trial below, the appellant was not prevented from proving by any evidence available to him that the induction order was invalid. He was accorded every right to which he was entitled under the doctrine of Estep v. United States, supra. The distinction between the Falbo and Estep cases is this: Falbo failed to report for the last step in the administrative process and, therefore, was denied the right to prove in a criminal trial that the induction order was invalid. Estep appeared at the induction center but refused to submit to induction; thus having pursued his administrative remedy to the end, he was permitted to defend upon the ground that his classification was illegal and his induction unauthorized. Each of the above cases is in point here, but Falbo has such a narrow application that we prefer to put our decision upon the later case, which held that, where the induction order was so contrary to law as to exceed the board's jurisdiction, its action might be interposed as a defense in a criminal prosecution. The court said, 327 U.S. at pages 120, 121, 122, 66 S.Ct. at pages 426, 427:

"The authority of the local boards whose orders are the basis of these criminal prosecutions is circumscribed both by the Act and by the regulations. Their authority to hear and determine all questions of deferment or exemption is, as stated in § 10(a) (2) [50 U.S.C.A.Appendix, § 310(a) (2)], limited to action 'within their respective jurisdictions.' It is only orders 'within their respective jurisdictions' that are made final. * * * Since § 10(a) (2) makes the decisions of the local boards final 'except where an appeal is authorized' under the regulations, the defense was allowed in the criminal trial.

"Any other case where a local board acts so contrary to its granted authority as to exceed its jurisdiction does not stand on a different footing. By § 10(a) (2) the local boards in hearing and determining claims for deferment or exemption must act 'under rules and regulations prescribed by the President.' Those rules limit, as well as define, their jurisdiction. * * *.

"We cannot read § 11 [50 U.S.C.A. Appendix, § 311] as requiring the courts to inflict punishment on registrants for violating whatever orders the local boards might issue. * * * The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customery scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant."

In his questionnaire the appellant disclaimed that he was a student for the ministry in a theological or divinity school. He claimed that he was a minister of Jehovah's Witnesses and had been since 1939. On November 20, 1945, the appeal board reclassified him in 1-A. Both the local and appeal boards considered every letter, affidavit, and document filed by him seeking to have his classification changed, except three letters written after his latest order to report was made by the local board.

Omnia praesumuntur rite et sollemniter esse acta donec probetur in contrarium. This ancient maxim applies to all acts of the local and appeal boards, but it does not apply so as to give them jurisdiction.[3] It applies a fortiori to the judgment under review, and in this court there is upon the appellant the burden of showing that his conviction amounted to a miscarriage of justice.[4] Undoubtedly in the trial court the burden was upon the appellant to show that

---

[3] Broom's Legal Maxims, p. 729 et seq.     [4] 28 U.S.C.A. § 391.

the induction order was void. To be more specific, the registrant was required to prove that he was a regular or duly ordained minister of religion. Let us then examine with particularity every serious ground of invalidity that is urged here against the order.

■■ The first is the alleged failure to summarize in writing, and to put in registrant's file, the oral evidence before the local board. The clerk testified on cross-examination that appellant appeared before the local board and gave oral testimony, none of which was reduced to writing and transmitted to the appeal board. Later this mistake in his testimony was corrected by the clerk himself, and a summary of the evidence, which was before both local and appeal boards, was placed in the record in the court below over the objection of appellant.[5] It showed that the registrant was sworn as a witness before the board, that he testified under oath, and that a summary of his testimony was placed in his file. It does not appear that his father was subpoenaed as a witness or sworn to testify before the board. The clerk testified that the father gave oral testimony but that it was not admissible. Why it was not admissible is not shown. Probably it was because he was not sworn and not regarded as a witness. The presumption is that the board acted legally in not placing in the file a summary of what the father stated,[6] it not being shown that what he said was competent or relevant.[7] No prejudice is shown to have resulted from the failure to put in the file a summary of what the father said, which may have been merely corroborative of his son's testimony.[8]

■ Since the registrant's own testimony was a sufficient basis for his classification, and since his friends and neighbors merely corroborated his evidence and spoke well of him, it was not prejudicial error for the local board to put in its file a summary of what they said. It is hardly consistent to claim that the induction order was invalidated by failure to summarize the unsworn, unrevealed testimony of the father, who was not subpoenaed as a witness, and in the next breath to contend that it was fatal error to summarize what was said by friends and neighbors of the registrant, who were contacted by members of the board.

The selection of registrants for exemption from military service rests primarily with a local board composed of local citizens. The members of the board are not prohibited from talking to friends and neighbors of registrants who claim to be exempt from service; but if any facts considered by the local board do not appear in the information in the file, the board is required to prepare and place in the registrant's file a written summary of such facts. This is what the local board did with reference to the friends and neighbors of appellant who were contacted on the subject of his being a regular minister of religion.

■ Second, the alleged action of the local board in filing a written argument against appellant's claim for exemption is assigned as error. Having objected to the absence of a summary of the evidence, which was afterwards produced, the appellant then denounced this summary as a written argument against his claim for exemption. The only basis for this contention is the last paragraph of the summary in which the board briefly states the reason for its classification of the registrant.[9] It merely stated that in the opinion of the board the registrant was not a minister. This added nothing that was not evident

---

[5] The district attorney said: "Yesterday he was objecting because we did not have any document of this character. I think he is just a little bit inconsistent."

[6] Omnia praesumuntur legitime facta donec probetur in contrarium.

[7] No person other than the registrant may request an opportunity to appear in person before the local board. Sec. 625.1 (b) of Selective Service Regulations.

[8] Reg. 627.13 (b) requires only that, "if any facts considered by the local board do not appear in the written information in the file, the local board shall prepare and place in the file a summary of such facts."

[9] "This Board has studied carefully Opinion Number 14 as amended November 2, 1942 and after having contacted the friends and neighbors of registrant, and having registrant himself before the Board it is of the opinion registrant is not a minister nor is he entitled to class 4-D classification."

from the board's classification of the registrant. If this was error, it was a slight one. It was not prejudicial and did not deprive the local board of jurisdiction.[10]

Third, complaint is made of the action of the local board in ordering him to report for induction before the time elapsed in which the appeal agent was allowed to intervene. There is no factual basis for this contention. After appellant's classification, he began writing letters to the board and sending it letters and affidavits from others. These letters and instruments bear dates from November 27, 1942, to December 11, 1945. Some of these were filed with the local board after the appeal board's final action on November 20, 1945, and subsequent to the induction order of December 7, 1945. There seems to be no merit in this contention.[11]

Fourth, it is contended that the undisputed evidence shows that appellant was a minister of religion, exempt from all duty of training and service, and that the board's action in denying him his proper classification was arbitrary, capricious, without support in the evidence, and contrary to law and the regulations. On this point we think that the sworn and undisputed evidence of the registrant himself was sufficient to warrant a finding that he was neither a regular nor ordained minister of religion, and was not exempt from military duty. It it be conceded that a finding to the contrary might reasonably have been made, nevertheless the act of classification was not so unreasonable as to exceed the board's jurisdiction. The appellant offered to prove that this board had never granted exemption to any of Jehovah's Witnesses. Evidence of this kind would have involved the merits of each case, and was clearly irrelevant. Upheld as it was by the board of appeals, the decision of the local board in this case was final even though erroneous, since there was a reasonable basis in fact for the classification.[12]

The first two of the above four points, relied on for reversal, relate to matters that preceded the original induction order. The appellant stipulated that he was convicted and served time in a penal institution for failing to obey that order. Neither the original classification nor the original induction order is directly involved in this prosecution. When the appellant entered a federal prison, he passed beyond the jurisdiction of the Leon County board and became subject to a special-panel local board under regulations governing registrants in penal or correctional institutions.[13] He was probably reclassified under an appropriate regulation.[14]

Upon his return home after his release from prison, he was reclassified in 1-A by

---

[10] "In preparing such a summary, the local board shall be careful to avoid the expression of any opinion concerning information in the registrant's file, and should refrain from including any argument in support of its decision." Reg. 627.13(b).

[11] Appellant made only one appearance before the local board (R. 41, 49, and 61). This appearance was on Jan. 26, 1943, in connection with his classification in 1-A prior to his first conviction in 1943.

Appellant filed with his local board the following written evidence:

1. His completed questionnaire, filed Nov. 30, 1942 (R. 5).

2. Five letters to the local board dated Nov. 28, 1942; Jan. 23, 1943; March 12, 1943; March 24, 1943; July 23, 1943 (R. 13).

3. Affidavit of R. L. Petty dated Nov. 27, 1942 (R. 16 and 31).

4. Certificate of J. T. M. Holt dated Dec. 11, 1945, and filed Dec. 14, 1945 (R. 18 and 33).

5. Certificate of David C. Toner dated Dec. 11, 1945, and filed Dec. 14, 1945 (R. 18 and 34).

6. Letter of registrant to local board dated Dec. 11, 1945, and filed Dec. 14, 1945 (R. 19 and 37).

The documents listed above in 1, 2, and 3 were before the appeal board on both appeals when it unanimously affirmed the local board on Feb. 3, 1943, and on Nov. 20, 1945 (R. 21). Those listed in 4, 5, and 6 were filed with local board subsequent to appeal board's final action herein on Nov. 20, 1945, and after induction order of Dec. 7, 1945 (R. 24).

[12] Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427.

[13] Part 662 of Selective Service Regulations.

[14] Section 662.4 of Selective Service Regulations.

his local board,[15] but the record does not show the exact date. It does show, however, that he appealed from the order and that the appeal board reclassified him in 1-A on November 20, 1945. This was more than two years after the dates of his original classification and induction order. It is not shown that the same individuals constituted either the local or appeal board, or that any member of either board was prejudiced against him. No irregularity in his reclassification is shown, and no testimony was offered to impugn the validity of the induction order that he is now charged with violating except things done prior to the original induction order, which it has been adjudicated was violated by him. Implicit in that adjudication is the validity of his original classification and induction order. Nevertheless, the lower court gave the appellant a hearing on the merits that amounted to a trial de novo of all issues decided by the local and appeal boards from the date of his registration.

■ Let us take our bearings again before concluding this opinion. What is the main issue that we must decide? There has never been but one substantial issue in this case, and that was whether or not the registrant was a regular minister of religion. This was an issue of fact; and the decision of it was exclusively within the jurisdiction of the local and appeal boards if there was a rational basis in fact for their decisions.

The question before the trial court was whether there was a reasonable basis for the findings of said boards that the registrant was not a regular minister of religion. The court below not only held that there was but approved the findings. The principal question before us is whether, under 28 U.S.C.A. § 391, the substantial rights of appellant have been prejudicially affected.

The only oral testimony under oath before the local board on the subject of his ministerial status was that of the registrant himself. He testified positively that he made his living working on his father's farm; that he received no pay for his services as a minister, but devoted probably twenty hours per month to the sale and distribution of religious literature for which he received no compensation. When asked if he regularly preached or held services, he said that he did not. The statute exempts regular or duly ordained ministers of religion and students who are preparing for the ministry in theological schools recognized as such for more than one year prior to the date of the Act.[16]

■ Appellant has never claimed to be a duly ordained minister or a theological student; he claims to be a regular minister of religion. This claim was rejected when he was convicted the first time for failing to obey an order to report for induction. The local board is forbidden to reopen a classification after it has mailed to registrant an order to report for induction, unless the board first specifically finds that there has been a change in his status resulting from circumstances over which the registrant had no control.[17] There was no such finding by the board in this instance, nor by the court below in its unrestricted review of the entire administrative proceeding. The registrant does not claim that his status has changed. He claims to have been a regular minister of religion since he was fifteen years of age. As well stated by this court, the local board did not have the power to induct, against his will, a regular minister of religion, but it had jurisdiction to determine whether the registrant was in fact such a minister.[18] Its decision was final because it rested upon a rational basis in fact.[19]

After an examination of the entire record, we find no reversible error therein, and the judgment appealed from is affirmed.

---

[15] Sections 662.14, 662.15 of Selective Service Regulations.

[16] 50 U.S.C.A. War Appendix, § 305 (d).

[17] Section 626.2 of Selective Service Regulations.

[18] Harris v. Ross, 5 Cir., 146 F.2d 355, 358.

[19] Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427.