**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Andrew NORRIS, Defendant-Appellant.**

**No. 14642.**

United States Court of Appeals Seventh Circuit.

Feb. 10, 1965.

Richard C. Ver Wiebe, Fort Wayne, Ind., for appellant.

Alfred W. Moellering, U. S. Atty., Joseph F. Eichhorn, Fort Wayne, Ind., for appellee.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

KILEY, Circuit Judge.

Norris, a Jehovah's Witness, appeals from his conviction by a jury of failure to report for civilian work in lieu of induction under the Universal Military Training and Service Act, 62 Stat. 604, 50 U.S.C.App. § 451 et seq. We affirm the conviction.

He was classified I-A by his Indiana Local Board and the classification was changed by the Appeal Board to I-O (con-

scientious objector) and he was denied a ministerial exemption. After the Appeal Board's classification, Norris was ordered by his Local Board to report for civilian employment. He disobeyed the order, and his indictment followed.

Before submitting to the jury the factual issue of Norris' wilful failure to report for civilian work the district court decided on examination of his Selective Service file that there was a basis in fact for the Appeal Board's I-O classification and its refusal to grant Norris a ministerial exemption.

In his original classification questionnaire in 1957 Norris claimed that he was a minister, though not regularly serving as one, that he was studying for the ministry, and that he was a conscientious objector. His claim to ministerial status was based on his baptism in 1953, at the age of fourteen. During 1961 he described himself variously to Selective Service authorities as "appointed Minister," "Ministerial Assistant," and "bible study conductor." One of Norris' superiors in the congregation described him to the Local Board as an "appointed Servant."

Norris stated in answer to a 1961 questionnaire that he spent twenty-eight hours a month training others, twelve hours a month giving public sermons, thirty-two hours a month instructing others, twenty hours a month attending ministry school and twenty hours a month distributing literature. He also stated that there were ninety-three members in his congregation, eight of whom were ministers. Supporting letters submitted by the leaders of Norris' congregation are vague as to the extent of his ministerial work, stating only that he assisted the leaders of the congregation and that "he has been given the responsibility of caring for and aiding a small group of witnesses within our Congregation."

Norris claimed that his secular work as a shipping clerk, at which he worked forty hours and earned $72.14 net a week, was necessary for him to support his dependent parents and minor sister and that this employment did not interfere with his ministry in any way. The Assistant Presiding Minister in his letter, however, stated that this secular employment did "to some degree" interfere with Norris' ministry. The file shows that Norris had failed to complete high school and that all of his prior employment had been unskilled labor. He also continually advanced, seemingly as alternate bases for his claim to an exemption, that he supported his parents and minor sister and that he was a conscientious objector to both military and non-combatant training and service.

When ordered by his Local Board to report for civilian work, Norris was in California. He was given an opportunity by the Local Board to select an approved employer for civilian duty and he chose the Watchtower Tract and Bible Society. The Board informed him that the Watchtower Society was not an approved employer and listed three Indiana institutions from which he could choose. He then requested and was told where he could obtain a list of approved employers in California, "since I am now a resident of the state of California and am supporting my mother and father in this locality. * * *" Finally he notified the Board that since he could not be employed by the Watchtower Society he could not accept any of the civilian employment offered to him.

The ministerial exemption [1] is a narrow one, not available to all members

---

1. The Act in Section 6(g) exempts from training and service "[r]egular or duly ordained ministers of religion." Congress defined the terms "duly ordained minister of religion" and "regular minister of religion" in Sections 16(g) (1) and (2) respectively, and excluded from those terms, in Section 16(g) (3), anyone "who irregularly or incidentally preaches and teaches the principles of religion of a church * * *" and any ordained minister "who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship * * * of his church * * *."

of a religious sect "by reason of their membership, even though in their belief each is a minister." Dickinson v. United States, 346 U.S. 389, 394, 74 S.Ct. 152, 156, 98 L.Ed. 132 (1953). The Supreme Court in Dickinson also stated that "[e]ach registrant must satisfy the Act's rigid criteria for the exemption," and that "preaching and teaching * * * must be regularly performed * * * [and] must * * * comprise the registrant's 'vocation' * * * [who] bears the burden of clearly establishing a right to the exemption." 346 U.S. at 395, 74 S.Ct. at 157.

■■ It was for the Appeal Board to decide on the facts whether Norris had sustained his burden of showing that his position in his congregation was such that his removal would leave a "flock * * * without its shepherd * * *," Fitts v. United States, 334 F.2d 416 (5th Cir. 1964); United States v. Stewart, 322 F.2d 592 (4th Cir. 1963), and that this work was his vocation and not his avocation. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152 (1953); United States v. Ranson, 223 F.2d 15 (7th Cir. 1955). The file shows that the Appeal Board had for its determination some basis in fact [2] and not mere speculation and suspicion. Dickinson v. United States.

■ Norris claims that he was denied procedural due process by the failure of the clerk of the Local Board in March 1961 to place before the Board a questionnaire, in which he claimed to be a full-time minister, for it to consider in determining whether to reclassify him; and that his classification is therefore a nullity and cannot support his conviction. Based on her own determination that the questionnaire did not constitute "new evidence," the clerk did not call it to the Board's attention and Norris was continued in his previous I-A classification.

Upon being ordered to report for a physical examination in August 1961, Norris claimed a ministerial exemption and a longer questionnaire was sent to him. This questionnaire and the entire file were before the Appeal Board when it denied the exemption and made the classification which gave rise to this case. Since that proceeding was properly conducted in accordance with Selective Service regulations, any prior defect was cured. See Porter v. United States, 334 F.2d 792 (7th Cir. 1964).

■■ Norris also claims prejudice in the district court's failure to instruct the jury, as requested, (1) that the word "knowingly" in the indictment means with "culpable intent" or an intent to evade the law, and (2) that they should not convict if the Board's action was arbitrary and capricious. We think the instructions given were sufficient and we see no merit in these contentions. In Graves v. United States, 252 F.2d 878 (9th Cir. 1958), relied on by Norris, the holding is only that the word "knowingly," as the district court instructed the jury in this case, is used "to insure that no one would be convicted * * * because of mistake or inadvertence or other innocent reasons." We think that there was ample evidence for the jury to find that Norris knew of the order and deliberately failed to obey it, and that the evidence was sufficient under the law and the instruction to satisfy the requirement of intent.

■■ Once the court determined that there was a basis in fact for the I-O classification, there was no necessity for submitting to the jury whether the denial of the ministerial exemption was arbitrary. There is no merit, therefore, to Norris' complaint about the second refused instruction. Questions as to the legality of the order are for the court and not for the jury. Dickinson v. Unit-

2. The Universal Military Training and Service Act, § 10(b) (3), 50 U.S.C. App. § 460(b) (3), provides that decisions of the Appeal Board shall be "final." The scope of judicial review is limited to a determination of whether there was a basis in fact for the classification given to the registrant. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

ed States, 346 U.S. 389, 74 S.Ct. 152 (1953); Estep v. United States, 327 U.S. 114, 66 S.Ct. 423 (1946). The holding in United States v. Mohammed, 288 F.2d 236 (7th Cir. 1961), is not otherwise.

Judgment is affirmed.

The court is grateful to Mr. Richard C. Ver Wiebe, of Fort Wayne, Indiana, who represented the defendant both at the trial and before this court as appointed counsel, for his able and dedicated efforts in behalf of his client.