Freddy Dale KUYKENDALL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 9637.

United States Court of Appeals
Tenth Circuit.

Jan. 3, 1968.

Frank Leslie, Tulsa, Okl., for appellant.

James E. Ritchie, Canton, Ohio (Lawrence A. McSoud, U. S. Dist. Atty., Tulsa, Okl., with him on brief), for appellee.

Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and DELEHANT *, District Judge.

MURRAH, Chief Judge.

Appellant Kuykendall, classified by his local draft board as I–O, i.e. a conscientious objector opposed to combatant and

* Senior District Judge for the Eighth Circuit sitting by designation.

noncombatant service in the Armed Forces, was charged under Section 462 of the Universal Military Training and Service Act, 50 U.S.C.A.App. § 462, with knowingly failing to obey an order of the Board to report to a place of civilian employment in lieu of induction. Kuykendall, a member of Jehovah's Witnesses, defended on the ground that he was a minister of religion and consequently entitled to exemption from training or service in the Armed Forces under 50 U.S.C.A.App. § 456(g). The trial judge held that Kuykendall failed to establish his exemption as a minister, and was guilty as charged. We affirm.

The pertinent facts are not in dispute. In 1961, Kuykendall registered in Tulsa, Oklahoma, with Local Board 75 of the Selective Service System. In a classification questionnaire and an accompanying letter submitted to the Board a year later, Kuykendall stated that he worked as a door maker an average of 50 hours per week; that he was ordained as a minister of Jehovah's Witnesses in February, 1961; that he was attending the theocratic ministry school [1]; that he presently devoted about 75 hours a month to door to door preaching and preaching from the pulpit at congregational meetings [2]; that he was "working toward the goal of becoming a pioneer minister" [3] and was "confident this goal [would] be reached in due time"; and that he was entitled to a classification as a minister of religion. Written statements from seven Jehovah's Witnesses were for-

warded to the Board attesting that Kuykendall was sincere in his religious beliefs and that he was recognized as a minister in his sect. Kuykendall also filed with the Board a completed conscientious objector form in which he stated that he was opposed to war, that he was associated with the Tulsa West Unit Congregation of Jehovah's Witnesses, and that the leader of the congregation was one Chester Brazeal who held the position of Congregational Servant.

After reviewing the submitted information, the local Board classified Kuykendall I–O, a classification relieving him, as a conscientious objector, from military combatant and non-combatant service, but requiring a period of service in "civilian work contributing to the maintenance of the national health, safety, or interest." 50 U.S.C.A.App. § 456(j). Kuykendall objected to the I–O classification and was granted a personal appearance before the local Board. There he requested a reclassification as a minister of religion, designated as IV–D, which would exempt him from all training and service whatsoever. 50 U.S.C.A.App. § 456(g). Kuykendall admitted to the Board that he did not hold any of several titled positions in his religious organization and that he was not, at the time, a Pioneer Minister. He stated, however, that he was engaged to be married and that both he and his wife planned to become Pioneer Ministers shortly after their marriage. Although the Board declined to reclas-

---

1. Arthur L. Claus, appointed by the Watchtower Bible and Tract Society as Assistant Congregational Servant for the West Unit Congregation, Tulsa, Oklahoma described the theocratic ministry school in a letter to Kuykendall's local Board in the following manner:

> "The Theocratic Ministry School [is] for the training of Ministers. This Ministry School has a very capable and qualified Instructor, who is appointed to this position by the Watchtower Bible & Tract Scoiety's Headquarters * * * for the training of Ministers. Here, each enrolled Minister learns the art of PREPARATION of Bible Sermons, etc., TEACHING and SPEAKING for

the Ministry. * * * Each enrolled Minister is counseled following his preaching from the pulpit before the Congregation throughout his training."

2. Kuykendall testified before the trial judge that his lectures given at the church meetings were "part of the theocractic ministry school."

3. A Jehovah's Witness who attains the status of Pioneer Minister is apparently considered by local draft boards as a "regular or duly ordained minister of religion" within the meaning of 50 U.S.C.A. App. § 456(g), as defined in 50 U.S.C.A. App. § 466(g).

sify the registrant as IV–D, they advised him that the average age for call by the Selective Service was 23, and that he had plenty of time to qualify as a Pioneer Minister.

Kuykendall's file was reviewed by the Appeal Board who tentatively determined that he was not entitled to either a IV–D or I–O classification. His file was then forwarded to the Department of Justice for an advisory recommendation. The Department of Justice advised that Kuykendall's conscientious objector claim should be sustained only as to combatant military training and service, and that he should be classified I–A–O, a classification requiring induction into the service and assignment to a noncombatant unit such as a hospital. Thereafter the Appeal Board unanimously classified Kuykendall I–A–O.

Following a preinduction physical examination, Kuykendall was ordered to report for induction. He reported on the specified date, but refused to submit to induction into the Armed Forces. His Selective Service file was then forwarded to the United States Attorney for prosecution, which was declined for the reason that no basis in fact existed for a denial of Kuykendall's I–O classification as a conscientious objector. Shortly thereafter, Kuykendall was again classified I–O by his local Board.

In June, 1966, the Board sent Kuykendall a letter offering him three types of civilian work in lieu of induction[4]. He replied that he would not perform any of the types of work suggested. There-

after the Board held a meeting with Kuykendall to reach an agreement as to the type of work he would perform. At the meeting, he stated that he would not accept any type of civilian work in lieu of military service because to do so would conflict with his religious beliefs. The local Board found that Kuykendall was qualified to perform hospital maintenance work, and he was ordered to report to the University of Kansas Medical Center on August 17, 1966. He failed to report as ordered, and his indictment and conviction followed.

Congress exempts "regular or duly ordained ministers of religion" from training or service in the Armed Forces. 50 U.S.C.A.App. § 456(g). The term "regular or duly ordained minister of religion" is given lengthy definition by the Act[5], and "does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister * * but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization." 50 U.S.C.A.App. § 466(g) (3).

■ Since the ministerial exemption is a matter of legislative grace, the registrant bears the burden of clearly establishing his entitlement to the exemption, i. e., he must satisfy the statutory criteria. See Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132;

---

4. The types of work offered were general hospital work, institutional work, and hospital maintenance work.

5. 50 U.S.C.A.App. § 466(g) provides:

"(1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship,

and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

"(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister."

Bradshaw v. United States, 10 Cir., 242 F.2d 180. In particular, the registrant must show that he "devotes his time to preaching and teaching in the manner of a 'vocation', * * * [that] the functions which he performs are those normally performed by ministers of other religions and * * * [that] he bears that relationship to a congregation ordinarily occurring between a cleric and his flock." Bradshaw v. United States, supra, 184. See also Dickinson v. United States, supra; United States v. Stewart, 4 Cir., 322 F.2d 592; Fitts v. United States, 5 Cir., 334 F.2d 416; United States v. Norris, 7 Cir., 341 F.2d 527.

The scope of review of selective service classification orders is narrowly limited to determining whether there is a "basis in fact" for the classification. If so, our inquiry is at an end. See Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Dickinson v. United States, supra; Bradshaw v. United States, supra; Fleming v. United States, 10 Cir., 344 F.2d 912. The sole issue on appeal, therefore, is whether the Board had a "basis in fact" for classifying Kuykendall I–O rather than IV–D.

Kuykendall admits that he received an order from his local Board to report for civilian work in lieu of induction, and that he wilfully and knowingly failed to comply with the order. His only defense is that he was improperly classified I–O, and that he should have been classified IV–D as a minister of religion. He argues that he satisfied his burden by presenting the uncontroverted statements of fellow Jehovah's Witnesses that he was considered to be a minister of the sect. But, as Judge Lewis said for us in Bradshaw, "the subjective beliefs of the registrant and his church cannot alone furnish the proper criteria for the determination of the question. Mere membership in an organization whose creed includes the conviction that all who sincerely work in the sect are ministers does not exempt

the registrant from induction into military service." Bradshaw v. United States, supra, 242 F.2d 184. See also Dickinson v. United States, supra.

We think the local Board could properly conclude that Kuykendall failed to satisfy the statutory criteria for exemption as a minister. The record shows that he spends approximately 200 hours per month as a door maker and only 75 hours per month teaching the principles of his sect.[6] His Bible talks to the congregation are apparently made only as a part of the training program of the theocratic ministry school. He admits that he holds no titled position except Congregational Publisher, a position held by all Jehovah Witnesses who engage in door to door activities.

On this record we certainly cannot say that there was no "basis in fact" for the Board's decision denying Kuykendall an exemption as a minister.

The judgment is affirmed.

---

6. In determining whether an individual's religious work constitutes his "vocation", the amount of time spent, although not conclusive, does carry much weight. See

Badger v. United States, 9 Cir., 322 F. 2d 902; Fitts v. United States, 5 Cir., 334 F.2d 416.