David Earl **FORE**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 9529.

United States Court of Appeals
Tenth Circuit.

Feb. 2, 1962.

Rehearing Denied Feb. 21, 1968.

6. 1A Moore's Federal Practice, p. 1346, par. O.168 [4.-1].

7. 1A Moore's Federal Practice, p. 1175, par. O.168 [3.-2].

John P. Kerr, Tulsa, Okl. (Alvin L. Floyd, Tulsa, Okl., on the brief), for appellant.

Hubert H. Bryant, Asst. U. S. Atty. (Lawrence A. McSoud, U. S. Atty., James E. Ritchie, and Robert P. Santee, Asst. U. S. Attys., on the brief), for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This is an appeal from a conviction for violation of the Universal Military Training and Service Act by failing and neglecting to comply with an order of appellant's local board to report to said board for further assignment to perform civilian work at the University of Kansas Medical Center, Kansas City, Kansas, pursuant to 50 U.S.C.A. App. § 456(j). Jury was waived and appellant was tried and convicted before the district court judge. Appellant's defense to this charge was that the order to report for civilian work was invalid in that he was improperly classified by his local board and that the local board had failed to follow the requirements of the acts and regulations which denied the defendant due process of law. The same basic arguments are presented on appeal as grounds for reversing the district court's conviction.

Appellant became a Jehovah's Witness early in life and in 1956, when he was ten years of age, attained full membership in the sect by being "ordained a minister." In 1964, when he reached the age of 18 years, he submitted his Selective Service System Classification Questionnaire together with various attachments to his local draft board. In support of his claim to a ministerial classification, i.e., IV-D, his answers to questions contained in the questionnaire showed him to be eighteen years of age, a student in high school and working 28 hours a week as a bus boy in the Sears & Roebuck Coffee House since September, 1963, and earning $1.25 per hour. He further states that he was a minister spending all "available time devoted to aiding others study the bible", and that he devoted "an average of 10 hours a month to field service" and listed prior work experience as "mobile home repair." He also stated that he had faithfully dedicated at least one month each summer or 75 hours in making calls on interested individuals about the religion; and, that he had made application to begin full time Pioneer Ministry beginning on June 1 of that year and had "set a goal of not less than 100 hours a month of Field Ministry." Evidence was also presented show-

ing his regular attendance at Friday, Sunday and Tuesday conclaves of his sect. He stated that he was a conscientious objector and requested the local board to furnish him with a "Special Form for Conscientious Objector." The attachments were in the form of letters from various other members of the sect attesting that he was a minister and engaging in activities of the church. In answering the questions contained in the Special Form for Conscientious Objector he reiterated in detail the facts to support a ministerial classification.

With this information Fore was denied his claimed ministerial exemption and was classified I-O, as a conscientious objector, on April 22, 1964. On October 7, 1965, the local board ordered him to report for physical examination and he was found to be physically acceptable. Between the date of this order and the physical examination he requested a personal appearance before the board and was advised that although his ten day time for appeal from his classification had expired he could submit any additional information in writing and thereafter that the board would give consideration to the reopening of his classification. He submitted two additional letters to the board and on November 3, 1965, the board did reopen his classification but retained the I-O classification. He then appealed to the Appeal Board where the I-O classification was sustained. His request for a Presidential appeal was thereafter denied.

■ Here, as in the trial court, appellant argues that the order for him to report was void for the reason that he was wrongfully denied the classification IV-D. There is no doubt but that the appellant may raise as a defense the argument that the board's classification was void because it had no basis in fact. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Kuykendall v. United States, 10 Cir., 387 F.2d 594; Salamy v. United States, 10 Cir., 379 F.2d 838; Carlson v. United States, 10 Cir., 364 F.2d 914. In Dickinson v. United States, supra,

the Supreme Court notes that the Universal Military Training and Service Act does not permit direct judicial review of Selective Service classification orders and that such classification orders shall be considered "final." This is interpreted to mean, however, while courts are not to weigh the evidence to determine whether the classification by the local boards was justified still the orders may be examined to see whether a basis in fact exists for the classification. If no basis in fact is found to exist then the board is considered to be without jurisdiction and the classification is considered void. The appellant in Dickinson v. United States, also a Jehovah's Witness, stated in his application for reclassification that he dedicated approximately one hundred hours each month to actual pioneer missionary work, and an additional fifty hours devoted to religious activities. He lived on $35.00 a month earned by a weekly average of five hours of radio repair work. The Supreme Court held that this evidence was uncontradicted and presented a prima facie case for establishing the right to the minister exemption. In effect, the Supreme Court said that a local board may not refuse a ministerial classification when a prima facie case is presented merely because it does not believe the statements made by the applicant. The court noted that "[W]hen the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice." Id. 346 U.S. at 397, 74 S.Ct. at 158. As recognized there, "[T]he ministerial exemption is a matter of legislative grace, [and] the selective service registrant bears the burden of clearly establishing a right to the exemption." Id. at 395, 74 S.Ct. at 157.

■ Appellant relies upon the Dickinson case. We have no difficulty distinguishing this case factually from Dickinson. The burden of establishing the

right to a particular exemption is upon the registrant and, in this case, Fore simply did not sustain that burden. From the information he furnished to the local board he was granted the classification of a conscientious objector, which was the most favorable consideration the local board could possibly have given to him. His statements to the board about what he expected to do in the future could not receive consideration because the board must classify him according to the existing facts and not by something that might happen or that he intends to do in the near future.

■ ■ Basically the information before the Appeal Board when it made the final classification of appellant as I-O,[1] revealed that he was a compulsory student at the Tulsa Public School System and worked approximately 28 hours per week as a bus boy. He devoted an average of 10 hours a month to field ministry and during the summers of 1964 and 1965 had worked as a vacation pioneer dedicating one month [2] each summer to making ministerial calls. Appellant stated he had made application to become a pioneer minister in June of 1964 and to have a goal of 100 hours per month of missionary work. Appellant stated that he regularly attended meetings of the Jehovah's Witnesses, averaging in total five hours per week, which included: Theocratic Ministry School, wherein he was trained to speak publicly and from house to house; Service Meetings, which involved speaking and demonstrations in which the appellant took part; and Public Talk, Watch Tower Study, and Area Book Study Meetings. Numerous letters were submitted with appellant's application each stating that the appellant was recognized as a minister of the Jehovah's Witnesses and that he intended to make the ministry his life work and career. Also included in the file which was before the Appeal Board was a letter from appellant and his minister which noted that appellant had been appointed as a book study conductor after his original classification of I-O by the local board. In considering whether appellant presented a prima facie case for fitting within the ministerial exemption only the basic facts of appellant's case should be considered and not expressions of intent or conclusionary statements.[3] These facts show that while the appellant was an active and devout member of the Jehovah's Witnesses he nonetheless was attending high school and working 28 hours a week as a bus boy at Sears as compared to an average of 30 hours per month devoted to religious activities. This simply was not sufficient to sustain his burden of showing he was qualified for the ministerial exemption and certainly did not present a prima facie case as did the registrant in Dickinson v. United States, supra.

■ Confusion arises in these Selective Service cases when a member of Jehovah's Witnesses sect is involved because of the difference in the meaning of the word "minister" as used by the sect[4] and as defined by the Congress in the Selective Service Act.[5] Judge

1. The classification by the Appeal Board superseded the classification of the local board and it is to the information presented to the Appeal Board to which we look to see the status of appellant's argument. Cramer v. France, 9 Cir., 148 F. 2d 801; Capehart v. United States, 4 Cir., 237 F.2d 388, cert. denied 352 U.S. 971, 77 S.Ct. 363, 1 L.Ed.2d 324.

2. During this period appellant spent approximately 75 hours per month doing ministerial work.

3. Many of the statements by appellant and those who wrote letters to the board were conclusionary in nature or expressed appellant's future intent. As such they did not present objective facts to serve as a basis for the board's classification.

4. The Jehovah's Witnesses sect apparently considers every member a minister.

5. 50 U.S.C.A. Appendix § 466(g) in pertinent part is as follows:

"(g) (1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and

Lewis in Bradshaw v. United States, 10 Cir., 242 F.2d 180, succinctly stated the meaning of the word minister as used in the Act when he said that the registrant must show that he "devotes his time to preaching and teaching in the manner of a 'vocation', * * * [that] the functions which he performs are those normally performed by ministers of other religions and * * * [that] he bears that relationship to a congregation ordinarily occurring between a cleric and his flock." Id. at 184. This court in the Bradshaw case expressly said "Mere membership in an organization whose creed includes the conviction that all who sincerely work in the sect are ministers does not exempt the registrant from induction into military service." Ibid.[6] This is clearly in line with Congressional intent as shown by the statements made coincident with the 1948 amendment.[7] The facts presented by Bradshaw to his local board were much stronger in support of a ministerial exemption than the facts pre-

sented by Fore but this court upheld Bradshaw's conviction and agreed with the finding by the trial judge that "In my opinion the board had a rational basis for its classification."

█ Appellant argues that the local board applied the wrong legal standard in denying him the IV-D classification. This argument is based upon testimony of the Clerk of the Selective Service Board to the effect that appellant was denied the classification because he was not a "full-time" minister and it fails for several reasons. First, the Clerk in no way makes the decision as to the classification and thus her opinion of what is required would not be significant or binding on the local board. In any respect the Clerk testified that the board applied the definition of minister found in the Selective Service Act in determining appellant's classification.

█ On January 27, 1966, appellant requested the local board to reopen his classification because of a letter from

---

to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization."

"(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

6. See the recent decision of this court in Kuykendall v. United States, 387 F.2d 594.

7. Senate Report No. 1268, 80th Congress, 2nd Session, dated May 12, 1948, states: "(g) Deferment of ministers and ministerial status.—Regular or duly ordained

ministers of religion and certain theological and pre-theological students, are exempted from induction but not registration. This sub-section parallels the 1940 Act, except as regards pre-theological students, who were not covered in the original statute. Serious difficuties arose in the administration and enforcement of the 1940 Act because of the claim of members of one particular faith that all of its members were ministers of religion. A minority of the Supreme Court thought that Congress intended to grant an exemption broad enough to include this group. (See the dissenting opinions in Cox v. United States, 332 U.S. 442, 445, 457 [68 Supreme Court 115, 92 L.Ed. 59]). In order that there may be no misunderstanding of the fact that the exemption granted is a narrow one, intended for the leaders of the various religious faiths and not for the members generally, the terms 'regular or duly ordained ministers of religion' have been defined in § 16(g). The definition is that which was contained in the 1917 Selective Service Regulations and which was successfully administered without the problem which arose under the 1940 Act."

the Watch Tower Bible and Tract Society which had been forwarded to the local board. The board refused to reopen appellant's classification and appellant assigns this as reason for holding his classification invalid. A refusal to reclassify would invalidate appellant's order if the registrant had supplied sufficient evidence to establish a prima facie case for the desired classification. See Dickinson v. United States, supra. The letter offered by appellant showed that appellant had not met the standards to become a regular pioneer but was appointed to serve as a vacation pioneer from February 1 through July 31, 1966. This appointment meant that appellant was to begin applying himself to at least 75 hours per month to door to door ministry. We feel that the board's refusal to reopen was not erroneous. The facts set out in the letter did not establish a prima facie case for granting appellant the IV-D classification. At the most it showed an intent to devote a certain amount of time. Appellant's application was that for a regular ordained minister. In such an application the information should show the appellant's present status and set out the amount of work he presently performs. We repeat that an expression of future intent does not satisfy the requirements for a regular and ordained minister.

The overall actions of the board indicated that it acted with fairness and with all due respect to appellant's request for a IV-D classification. We, therefore, find that the resulting classification was valid.

Additionally appellant argues that his conviction should be reversed because the Government did not show that the order for appellant to report was a valid order by showing that appellant would have been inducted prior to the time he was to report to the K. U. Medical Center, as required by 32 C.F.R.

1660.20, and secondly that the K. U. Medical Center is a suitable institution for civilian work as required by 32 C.F.R. 1660.1. Appellant asserts that the burden is on the Government to show the validity of the induction order and thus it had a burden to show that all the procedural requirements behind the issuance of such an order were fulfilled, citing Franks v. United States, 9 Cir., 216 F.2d 266. The court in the Franks case was not considering the specific problem presented here and in any respect we note that numerous other circuits, including this court, have held counter to appellant's position.[8] The Government showed that an order was issued that appellant report. It was also admitted that appellant failed to report pursuant to that order. This presents a prima facie case for a conviction. The appellant may present as a defense that the order was invalid, e. g., Dickinson v. United States, supra. The burden, however, is upon the defendant to present the defenses that the classification was void or that he was prejudiced by a denial of some procedural safeguard.

In any respect, the Clerk testified that the appellant would have been inducted by December 16, 1965, more than half a year before appellant was ordered to report. Appellant argues that this does not take into account time for the appeal which a registrant could take from his first classification. There is, however, no requirement that accord must be given the hypothetical date of induction of a person who makes all available appeals. The regulations merely require that a conscientious objector not report "prior to the time that the registrant would have been ordered to report for induction if he had not been classified in class I-O." 32 C.F.R. § 1660.20. This refers to the date of induction of the hypothetical person, classified I-A, and proceeding normally, without appeal, to induction. In the instant

8. See Keene v. United States, 10 Cir., 266 F.2d 378; Wells v. United States, 5 Cir., 158 F.2d 932, cert. denied, 330 U.S. 827, 67 S.Ct. 867, 91 L.Ed. 1276; Osborn

v. United States, 4 Cir., 319 F.2d 915; and Steele v. United States, 1 Cir., 240 F.2d 142.

case the date given of December 16, 1965, would satisfy the requirement that appellant not be made to report for substitute civilian work before the date he would have been inducted. The Clerk also testified that the K. U. Medical Center was an appropriate center for civilian work. At the very least this testimony raised a presumption that the procedural requirements for having a valid order to report were met. Since the appellant made no attempt to overcome these presumptions there is no merit to his argument that they must now be considered as a basis for reversing his conviction.

Affirmed.