**UNITED STATES of America,
Plaintiff,**

v.

**Edward Alfred HARDIN, Defendant.
Crim. A. No. 71–CR–156.**

United States District Court,
D. Colorado.

Sept. 17, 1971.

William K. Hickey, Asst. U. S. Atty., Denver, Colo., for plaintiff.

Raymond J. Turner, Denver, Colo., for defendant.

CHILSON, Judge.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

By information, the defendant was charged with a violation of the Selective Service Act, in that he failed to comply with an order of his local board to perform civilian work.

The charge was tried to the court without a jury on June 29, 1971. The matter was then continued for the filing of briefs. The Court has considered the evidence and the briefs and is now prepared to render its decision.

## ISSUES FOR DETERMINATION

While admitting the failure to comply with the order to perform civilian work, the defendant raises the following defenses:

1. That he was deprived of procedural due process of law, in that the Selective Service Board failed to comply with the applicable Federal Regulations; and,

2. That he was entitled to a ministerial exemption under the law and was exempt from performing civilian work.

## FINDINGS OF FACT

The essential facts are found in the defendant's Selective Service file which was admitted into evidence as plaintiff's Exhibit 1. This file consists of a number of documents which are numbered consecutively 1 through 38.

These will be referred to as "Documents" with the appropriate number following.

The pertinent facts revealed by Exhibit 1 are set forth in chronological order, with reference to the particular Documents.

## FACTS REVEALED BY EXHIBIT I

In May of 1968, defendant filed his classification questionnaire (Document 1) in which, among other things, he stated he was born May 17, 1950; that since 1957 (at age 7) he has been a Minister of the Jehovah's Witnesses; that he is a full-time student in high school, and that he is a student preparing for the ministry under the direction of Jehovah's Witnesses, pursuing a full-time course of instruction at the Kingdom Hall, Northeast Unit.

In November 1968, (Document 3) the defendant wrote the Board that he had been associated with Jehovah's Witnesses

for the past eight years, and because of his religious convictions, his conscience did not permit him to participate in warfare in any form, and that he wished to be classified according to his religious beliefs.

On December 5, 1968, (Document 4) the defendant filed his claim for classification as a conscientious objector.

On April 16, 1969, (Document 6) the Board invited the defendant to meet with the Board on April 23, 1969, to discuss his conscientious objector claim and sent him a questionnaire to be answered in writing and submitted to the Board at the April 23 meeting. On April 23, 1969, the defendant met with the Board and submitted his answers to the questionnaire in which the defendant stated he was spending 120 hours per month in secular work, 10 hours per month in ministerial activity, and 35 hours per month in reading or preparation for ministerial activity. (See Document 7).

At the interview on April 23, 1969, the defendant stated that he does ministerial work, but he does not claim to be a minister. On April 23, 1969, the Board classified the defendant "I-O", (Conscientious Objector). (Document 8).

The next day on April 24, 1969, the Board mailed to the defendant, a notice of his classification as a conscientious objector and SSS Form 217 entitled "ADVICE OF RIGHT TO PERSONAL APPEARANCE AND APPEAL" advising the defendant of his right to ask for a personal appearance before the Board and the right to ask for an appeal to the State Appeal Board and that a request for either a personal appearance before the Board on an appeal must be made in writing to the local board within 30 days from April 24, 1969, the date of the mailing. (Document 9).

The defendant, within the 30-day-period, made no request for personal appearance or appeal of his classification.

On January 2, 1970, (Document 10), the defendant was ordered to report for Armed Forces Physical Examination. He was examined on January 23, 1970, and found acceptable. (Document 11). On May 20, 1970, the local board advised the defendant by letter that his lottery number had been reached and he would be ordered for induction except that he was classified I-O (Conscientious Objector) and that he was required to perform civilian work. A list of employers acceptable under the Civilian Work Program in Colorado was enclosed and defendant was advised that if he did not volunteer for civilian work, he would be ordered to work with an employer of the local board's choosing. (Documents 13 and 14-A)

Defendant replied by letter (Document 14) requesting a IV-D classification (Ordained Minister).

The Board responded on June 5, 1970, by letter, (Document 15) advising the defendant that the local board would grant him a "courtesy appearance" in regard to consideration of his request for a IV-D classification. He was notified to appear before the Board on June 16, 1970. The defendant was sent a questionnaire (Document 15-A) which was to be answered and returned within 10 days and prior to his personal appearance before the Board.

Defendant answered the questionnaire (Document 16-B) and among other things, stated that he was then secularly employed, but he has tendered his resignation and "will be looking for part-time employment, so I can spend full-time in the ministry". He further stated, among other things that for the past six months, he had averaged 25 hours per month in the ministry and 16 hours per month in study.

The Board, after the personal interview, made its decision a matter of record in the Selective Service file as follows: (Document 17)

"This Board, after one hr. careful questioning and sincere deliberation do not feel this young man is actually working as a minister and we also feel he was not entirely truthful with us."

The Board notified the defendant by letter dated June 16. 1970, (Document 18) that the local board declined to reopen his classification; advised him that he remained in the I-O classification; and that the Board did not feel that he was "actually working as a minister on a full-time basis with sufficient hours to qualify you for the IV-D classification." He was also advised to appear before the Board on July 21, 1970, to discuss the type of civilian work which he would perform.''

On June 30, 1970, the defendant was advised that he could satisfy his obligation by 24 months of work at Penrose Hospital in Colorado Springs, and he was invited to select the type of work he was willing to perform and to reply prior to July 10, 1970. (Document 19).

The defendant replied (Document 20) indicating he would not accept the employment designated and that he had arranged his affairs so that he was able to pursue the full-time ministry as his vocation.

On July 9, 1970 (Document 21) defendant again wrote the Board that he would not do the work offered by Selective Service and stated "also at this time I am engaging in the full-time ministry".

On July 21, 1970, the defendant had a "courtesy appearance" before the Board at which defendant stated that he was still a "Vacation Pioneer" and had a secular job as well. The Board declined to change his classification and so notified defendant by letter dated July 21, 1970. (Documents 22 and 23).

On August 4, 1970, the Board wrote the defendant requesting him to appear at the office of the Board on August 18, 1970, to reach an agreement concerning the type of civilian work which should be performed by him.

On August 18, 1970, (Document 25) defendant met with the Board and again refused to do any civilian work.

On September 17, 1970 (Document 32), defendant was ordered to report to Penrose Hospital for civilian employment.

Because of his refusal to report, this prosecution followed.

## CONCLUSIONS OF LAW

■ Referring to defendant's claim that the Board did not comply with the Regulations, it is established by Atkins v. United States, 204 F.2d 269 (10th Cir. 1953) that a failure to accord a registrant the procedural rights provided by the Regulations and which failure is prejudicial to the registrant, is a denial of procedural due process, but a procedural irregularity in the administrative proceedings which does not result in prejudice to the registrant, is not a denial of due process.

■ The defendant contends that Section 1624.2(d) of the Regulations found in Title 32 C.F.R. required the Board to mail a "Notice of Classification" (SSS Form 110) to the registrant after his personal appearances before the Board on June 16, 1970, and July 21, 1970. Admittedly, the Board did not do so and the defendant contends this omission constituted a denial of procedural due process.

We have carefully considered the Regulations and determine that Section 1624 is not applicable in this case and that the Board's procedure is governed by Section 1625 for the reasons which follow.

Section 1624 is entitled "APPEARANCE BEFORE LOCAL BOARD".

Section 1625 is entitled "REOPENING AND CONSIDERING ANEW REGISTRANT'S CLASSIFICATION".

The Court concludes that Section 1624 applies only to the procedure to be followed in making the registrant's original classification and Section 1625 prescribes the procedure for reopening a classification. As so construed, Section 1624 and 1625 are consistent, one with the other; otherwise, they are conflicting.

As so construed, Section 1624.1 provides for a personal appearance of the registrant before the Board after his original classification, if he files a written request therefor within 30 days after

he has been mailed the notice of classification.

Failing to apply for a personal appearance within the 30-day period, the remaining provisions of Section 1624 are not applicable and a registrant's recourse thereafter is pursuant to Section 1625 which prescribes the procedure for reopening a classification, once the original classification has been determined.

Section 1625 provides that no classification is permanent and prescribes procedures for reopening and considering anew the classification of a registrant upon his request or upon the Board's own motion.

Section 1625.4 provides in pertinent parts:

"When a registrant * * * files with the local board, a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such a request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such a registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter, shall advise the person filing the request, that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required."

In this case, the registrant was originally classified on April 23, 1969. He was mailed his notice of classification and made no request within the 30 days thereafter for a personal appearance, nor did he in any way object to his classification as a conscientious objector until May of 1970, when he was informed that his lottery number had turned up, and that he would be required to do civilian work.

At that time, he requested a change of his classification to IV-D (ordained minister). (Document 14).

After the Board refused to reopen the defendant's classification and after his personal appearances before the Board on June 16 and July 21, 1970, Section 1625.4 required only that the Board advise the defendant by letter that the information submitted did not warrant the reopening of the registrant's classification. This the Board did. (Document 18 and 22).

The Court concludes that the defendant was not denied procedural due process.

The second contention of the defendant is based on the assumption that the Board's refusal to reopen the defendant's classification and classify him as an ordained minister is based entirely and solely upon the fact that the defendant was classified by the Jehovah's Witness sect as a "Vacation Pioneer" as opposed to a "Pioneer Minister". Although the evidence discloses no definition of these terms, the case law in Selective Service cases involving Jehovah's Witnesses has established the meaning of these terms.

In Robertson v. United States, 417 F. 2d 440 at 445 (5th Cir. 1969) is found the following statement:

"By definition, Vacation Pioneers are not regular ministers of the Watchtower Society. They are on the Pioneer List temporarily, as we said in McCoy v. United States, supra, [5 Cir.,] 403 F.2d [896] at 901. The Superintendent of Ministers and Evangelists of the Watchtower Society, T. J. Sullivan, described a Vacation Pioneer appointment as follows: 'It is an arrangement whereby persons can engage in the Pioneer ministry for shorter periods, such as when one is on vacation or when one is free for a month or two or longer and can engage in the Pioneer ministry.' We also pointed out in McCoy, supra at 901, that according to a memorandum to the National Selective Service Appeal

Board by Hayden Covington, General Counsel of Jehovah's Witnesses, the Watchtower Society would not contend for a IV-D classification for Jehovah's Witnesses except for those who qualify as Pioneers and as a Congregation Servant and who are devoting their time to ministerial work sufficiently to claim it as their vocation rather than their avocation. The Pioneers to which Mr. Covington referred are a Regular Pioneer who is required to spend an average of 100 hours per month or a total of 1,200 hours annually in ministerial work, and a Special Pioneer who is required to put in an average of 150 hours per month."

Thus, it does not appear that the Jehovah's Witnesses recognized the defendant as an ordained minister qualified for a IV-D classification because he had not devoted sufficient time to ministerial work to justify a claim that it was his vocation rather than an avocation.

Aside from the references to "Vacation Pioneer", the evidence shows that on April 23, 1969, when defendant was first classified, that he was spending 120 hours per month in secular work, 10 hours in ministerial activity and 35 hours in reading and preparation, and at that time, defendant did not claim to be entitled to a IV-D classification as a minister. It was not until May of 1970, when he was advised that his lottery number had been reached and he would be required to perform civilian work, that the defendant, for the first time, claimed his classification should be changed to that of an ordained minister. (Document 14). Yet at that time, he stated that for the past six months, he had averaged only 25 hours per month in the ministry and 16 hours per month in study. He stated that he "will be looking for part-time employment, so I can spend full-time in the ministry." This was a statement looking to the future and not to his present status and amounted to an admission that defendant was not then engaged in the ministry full time or sufficiently to entitle him to a IV-D classification.

The Board, upon this information and a personal interview with defendant, found that the defendant was not actually working as a minister, and advised the defendant that it did not feel that he was actually working as a minister on a full-time basis with sufficient hours to qualify him for the IV-D classification.

The burden of establishing the right to a particular exemption is upon the registrant. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Kuykendall v. United States, 387 F.2d 594 (10th Cir. 1968); Fore v. United States, 395 F.2d 548 (10th Cir. 1968); Owens v. United States, 396 F.2d 540 (10th Cir. 1969).

Not only did the defendant not sustain this burden of proof, but there is a complete absence of any evidence which would have supported a IV-D classification.